**ARROW LAKES DAIRY, INC.**

v.

**Joseph N. GILL, Commissioner of Agriculture, Conservation and Natural Resources of the State of Connecticut; and the State Milk Regulation Board of the State of Connecticut.**

Civ. No. 8918.

United States District Court
D. Connecticut.

Dec. 27, 1961.

730

Corkey & Barrows, by Richard F. Corkey, New London, Conn., for plaintiff.

Albert L. Coles, Atty. Gen., by Michael J. Scanlon, Asst. Atty. Gen., for defendant.

BLUMENFELD, District Judge.

The plaintiff, a Rhode Island corporation, who operates a plant in Cranston for the processing and pasteurization of milk and cream has made Joseph M. Gill, Commissioner of Agriculture, Conservation and Natural Resources [Commissioner] and the State Milk Regulation Board of Connecticut [Board] defendants in this action seeking a declaration from the court that a portion of the state law

(§ 22–196, Conn.Gen.Stat.Rev.1958) [1] regulating the sale of milk within its borders insofar as it relates to a restriction upon the board to approve the issuances of permits for public sale of milk and cream in Connecticut to plants located beyond the geographical limits of the state boundary, augmented by the area within any town, city or borough adjoining that boundary, is unconstitutional as applied to the plaintiff's plant because it is violative of the commerce clause [2] and the due process clause. [3]

## Standing of Plaintiff

■ To show how the plaintiff's interests are touched by the challenged statute, it alleges in paragraph eight of its complaint that it "desires and proposes to sell" milk and cream processed and pasteurized at its plant "to persons, firms and corporations who would purvey the same at retail in the State of Connecticut." Paragraph nine alleges that the Commissioner, acting by his agents, has threatened criminal prosecution of the persons referred to in paragraph eight. Taken together, the allegations set forth an ephemeral contact between the plaintiff and the statute. The hypothetical "persons, firms and corporations" have not been joined. The plaintiff, apparently, could not induce them to bring suit.

There is no present relationship between such hypothetical "persons" and the plaintiff which could possibly qualify as a legally protectible interest. An applicable analogy is furnished by Tileston v. Ullman, 318 U.S. 44, 63 S.Ct. 493, 87 L.Ed. 603 (1943) and by Ex-Cell-O Corp. v. City of Chicago (7 Cir. 1940), 115 F.2d 627. See Boeing Airplane Co. v. Board of County Commissioners, etc., 164 Kan. 149, 188 P.2d 429, 11 A.L.R.2d 350 (1940).

Assuming that some one might sometime become somehow subject to criminal prosecution for a sale in Connecticut of milk processed by the plaintiff, neither the Commissioner nor any agents of his could prosecute. The power of enforcement in the Commissioner is that provided in § 22–128. The only prosecutors of criminal violations in Connecticut are those appointed by the established state courts to prosecute all criminal cases within their respective jurisdiction. Cf. Connecticut Importing Co. v. Perkins (D.C.Conn.1940), 35 F.Supp. 414.

If the plaintiff here did have a legally protectible interest, and if the Commissioner did have the power to institute criminal proceedings, an action for a declaratory judgment in this court could not be used to obtain a ready made defense to a threatened prosecution in a state court. [4]

1. Conn.Gen.Stat. § 22–196 (Rev. of 1958) : *"Pasteurization within the state. Permits for imported pasteurized milk or cream.* Milk shall not be repasteurized. All milk or cream, except certified pasteurized milk or certified pasteurized goats' milk, *sold in the state as* pasteurized milk or cream shall be pasteurized within the state, unless a special permit has been issued by the commissioner covering an emergency. Nothing in this section shall prevent the commissioner from issuing a permit for the sale of imported pasteurized milk and imported pasteurized cream, provided such permit shall have the approval of the milk regulation board. Such approval shall not be issued unless the dairy plant indicated in the application in which the imported pasteurized milk and pasteurized cream are pasteurized is located in a town, city or borough adjoining the state boundary and unless the person, firm or corporation applying for

such permit complies with all the Connecticut laws, orders and regulations governing similar dairy plants, milk and cream dealers or milk and cream pasteurizing plants located in this state. (1949 Rev., § 3238; 1951, 1953, Supp. § 1767d.)"

2. Article 1, Section 8, Clause 3 of the Constitution of the United States.

3. Section 1 of the XIV Amendment to the Constitution of the United States.

4. A threshold question of jurisdiction arises because the plaintiff has not alleged the 'facts necessary to bring its action within the federal-question requirements because (1) It has not alleged that the matter in controversy exceeds $10,000, 28 U.S.C. § 1332, as amended July 25, 1958 P.L. 85–554 (2) The existence of a federal question in the posture of the case at this point is in doubt. See Bonanza Airlines Inc. v. Public Service Comm. (D.C.Nev.

Douglas v. City of Jeannette, 319 U.S. 157, 63 S.Ct. 877, 87 L.Ed. 1324 (1943); Public Service Comm. of Utah v. Wycoff, 344 U.S. 237, 241, 73 S.Ct. 236, 97 L.Ed. 291 (1952); See International Longshoremen's, etc., Union Local 37 v. Boyd, 347 U.S. 222, 224, 74 S.Ct. 447, 98 L.Ed. 650 (1954). As stated in a like situation by Mr. Justice Jackson, Public Service Comm. of Utah v. Wycoff (supra) at p. 248, 73 S.Ct. at p. 242:

"In this case, as in many actions for declaratory judgment, the realistic position of the parties is reversed. The plaintiff is seeking to establish a defense against a cause of action which the declaratory defendant may assert in the Utah courts. Respondent here has sought to ward off possible action of the petitioners by seeking a declaratory judgment to the effect that he will have a good defense when and if that cause of action is asserted. Where the complaint in an action for declaratory judgment seeks in essence to assert a defense to an impending or threatened state court action, it is the character of the threatened action, and not of the defense, which will determine whether there is federal-question jurisdiction in the District Court. If the cause of action, which the declaratory defendant threatens to assert, does not itself involve a claim under federal law, it is doubtful if a federal court may entertain an action for a declaratory judgment establishing a defense to that claim. This is dubious even though the declaratory complaint sets forth a claim of federal right, if that right is in reality in the nature of a defense to a threatened cause of action. Federal courts will not seize litigations from state courts merely because one, normally a defendant, goes to federal court to begin his federal-law defense before the state court begins the case under state law. [State of] Tennessee v. Union & Planters' Bank, 152 U.S. 454, 14 S.Ct. 654, 38 L.Ed. 511; The Fair v. Kohler Die & Specialty Co., 228 U.S. 22 [33 S.Ct. 410, 57 L.Ed. 716]; Taylor v. Anderson, 234 U.S. 74 [34 S.Ct. 724, 58 L.Ed. 1218]."

### Ripeness

■ The plaintiff also alleges that on July 7, 1961, an application was made "for approval of its said plant in said Town of Cranston, Rhode Island, for the pasteurization of milk and cream for public sale in the State of Connecticut pursuant to the provisions of 1959 Public Act No. 84" (§ 22–195, Conn.Gen.Stat.Rev. of 1958, as amended) and that on July 13, 1961, the defendants refused to issue a permit on the ground that it lies beyond the geographical boundaries described in § 22–196. But § 22–196 also provides that no approval may be granted to anyone "unless the person, firm or corporation applying for such permit complies with all the Connecticut laws, orders and regulations governing similar dairy plants, milk and cream dealers or milk and cream pasteurizing plants [5] located in this state." The plaintiff does not allege that it is in compliance or that it offered to prove before the Commissioner or the Board that it does comply with the

---

1961), 186 F.Supp. 674 at 678 (Three-judge court 9 Cir.1960). See quote from Utah v. Wycoff (infra) at p. 732.

Nor does the court have jurisdiction on a different basis. If considered as a diversity case under 28 U.S.C. § 1332 as amended (supra) in addition to the omission of adequate jurisdictional amount plaintiff, as a corporation, has not alleged its principal place of business. See F & L Drug Corporation v. American Central Insurance Company (D.C.Conn.), 200 F. Supp. 718; Browne v. Hartford Fire Insurance Co. (D.C.N.D.Ill.1959), 168 F. Supp. 796; Harris v. Standard Accident Ins. Co. (2 Cir. 1961), 297 F.2d 627, p. 629, footnote 2.

5. As stated in plaintiff's brief, "The production, handling, processing, sale and distribution of milk is highly regulated under the seventy-seven sections of said Chapter 430, from the domicile of the cow from whose udders the milk is taken to its final destination in the home of the consumer."

concededly numerous applicable laws, orders and regulations. It is necessary to show compliance with other conditions for a permit before one can object to a denial on a particular ground. Wilson et al. v. Loew's, Inc., 355 U.S. 597, 78 S.Ct. 526, 2 L.Ed.2d 519 (1958); Cf. Columbia Terminals v. Lambert (D.C.E.D.Mo. 1939), 30 F.Supp. 28, vacated 309 U.S. 620, 60 S.Ct. 471, 84 L.Ed. 983 (1939). Before the time had expired for an appeal from the Board's refusal to approve (if that may be regarded as a "ruling * * or order" under § 22–170 at that stage of the proceedings before the Commissioner rather than an informal declaration of the Board's position about a doubtful question [6]), the plaintiff filed this action on August 11, 1961. Thus, if it is assumed that the plaintiff's plant is located within Connecticut, there is nothing in the complaint taken on its face to require the issuance of a permit to the plaintiff. The plaintiff does not request an order requiring the Commissioner to issue a permit. Were it to do so, it would run squarely into the defense that it has not exhausted its administrative remedies. Myers v. Bethlehem Shipbuilding Corp., 303 U.S. 41, 50–51, 58 S.Ct. 459, 82 L.Ed. 638 (1937). The attempt to circumvent this requirement occurs before any proper final administrative action. Although plaintiff's counsel obtusely compares the geographical requirement to the cart before the horse, the statute now appears to require that both qualifications must be shown to exist before the application may be approved. The plaintiff's allegations do not bring him sufficiently within the statute to feel the bite of that part which it contends is unconstitutional. A determination of the issue in its favor would not be controlling to deter any prosecutions in the future since it would remain subject to penal law for failure to comply with these other provisions. The court can only speculate as to whether the plaintiff would meet these qualifications.[7] Withholding judicial inquiry into constitutional issues until the plaintiff is willing to establish that he otherwise qualifies creates no unwarranted hardship for the plaintiff. Neither its previous business conduct nor scope of activities have been circumscribed. Cf. City of Chicago v. Fieldcrest Dairies, 316 U.S. 168, 172, 62 S.Ct. 986, 86 L.Ed. 1355 (1942); United States v. Los Angeles & S. L. R. Co., 273 U.S. 299, 309–310, 47 S.Ct. 413, 71 L.Ed. 651 (1927). As stated by Mr. Justice Black in the leading case of Macauley v. Waterman S. S. Corp., 327 U.S. 540, 544–545, 66 S.Ct. 712, 714, 90 L.Ed. 839 (1946): "Here * * * the administrative process, far from being exhausted, had hardly begun. The District Court * * * was correct in holding that it lacked jurisdiction to act." Cf. Far East Conference v. United

6. In several cases informal administrative opinions have been held unripe for review. Helco Products Co. v. McNutt, 78 U.S.App.D.C. 71, 137 F.2d 681, 149 A.L.R. 345 (D.C.Cir.1943); Miles Laboratories, Inc., v. F. T. C., 78 U.S.App. D.C. 326, 140 F.2d 683 (D.C.Cir., cert. denied 322 U.S. 752, 64 S.Ct. 1263, 88 L.Ed. 1582). In the Helco case, the plaintiff who wanted to ship poppy seeds dyed blue in interstate commerce was advised by the Commissioner that this would be adulteration under the Food and Drugs Act, 21 U.S.C.A. § 301 et seq. A request for an opinion was refused by the Attorney General. The court of appeals in affirming the district court's denial of a declaratory judgment stated: "What a comfort it would be, if a declaratory judgment could be made as available as an interoffice memorandum, whenever a board of directors meets to consider a new venture. But that millenium has not yet arrived." Ibid., 137 F.2d at p. 684.

7. That the plaintiff is aware of this is clear from the allegations in paragraph 5 to the effect that the plaintiff's plant is subject to statutes, rules, regulations and inspection governing milk and cream processing and pasteurization in Rhode Island and in paragraph 6 that these are in reasonable conformance to the standards recommended by the United States Public Health Service. This is not an allegation that the legal and administrative safeguards in Rhode Island are the same as those a Connecticut permittee must comply with. Is the next action to be one for a declaratory judgment of substantial equality?

States, 342 U.S. 570, 72 S.Ct. 492, 96 L.Ed. 576 (1952); Leiter Minerals Inc. v. United States, 352 U.S. 220, 77 S.Ct. 287, 1 L.Ed.2d 267 (1956).

8. Thus it is quite possible that the courts of Connecticut might interpret § 22–196 as merely setting the geographical boundaries within which the Commissioner is permitted to furnish the inspection services imposed upon him without making any charge, since § 22–195 provides that upon application for a pasteurization permit the Commissioner will undertake to inspect the facilities prior to approval. This is done now without charge. In fact, the Attorney General of the State of Connecticut furnished an opinion to the board on March 14, 1951, after the board had seen the opinion of the United States Supreme Court in Dean Milk Co. v. City of Madison, 340 U.S. 349, 71 S. Ct. 295, 95 L.Ed. 329 (1951) stating:

"Milk — Pasteurized — Interstate — Constitutional Law

"Since Section 3238 of the General Statutes provides under conditions for the authorization for the importation of pasteurized milk into the State with the approval of the Milk Regulation Board and it is indicated that the Board has actually issued permits for such importations in the past, it is quite possible for the Board to continue with the operation of Section 3238, modified to the extent indicated by the United States Supreme Court.

"Milk Regulation Board    March 14, 1951
State Office Building
Hartford, Connecticut

"Gentlemen:

"This will acknowledge receipt of your letter of March 1, 1951, signed by your Clerk, H. Clifford Goslee.

"You draw our attention to the case of Dean Milk Co. v. City of Madison, 71 Supreme Court 295, decided by the United States Supreme Court on January 15, 1951, in which case the Court had before it for decision the validity of an ordinance of the City of Madison, Wisconsin, making it unlawful to sell any milk as 'pasteurized' unless it had been processed and bottled at an approved pasteurizing plant within a radius of five miles from the central square of Madison. This ordinance was held to be unconstitutional because it discriminated against interstate commerce, and must yield to the principle that 'one state in its dealings with another may not place itself in a position of economic isolation.'

"In your letter you indicate that Section 3238 of the 1949 Revision of the General Statutes prohibits milk or cream being sold in this State as 'pasteurized',

Furthermore, there may be reason to expect that pursuit of the administrative remedy would leave no constitutional question.[8] Aircraft & Diesel Equipment

unless it shall be pasteurized within the State. You conclude your letter by asking our advice for 'any reason why we should not proceed with the enforcement of Section 3238'.

"It is elementary that the Constitution of the United States is the supreme law of the land. The United States Supreme Court is the supreme judicial authority with respect to the interpretation of Federal constitutional issues. Barber v. The International Company, 74 Conn. 652, 656 [51 A. 857]; Connolly v. Union Sewer Pipe Co., 184 U.S. 540, 22 Sup.Ct.Rep. 431 [46 L.Ed. 679]. In the Dean Milk Company case, supra, the United States Supreme Court has decided that the local ordinance, which in essence and principle is similar in character to our Section 3238, is repugnant to the provisions of the Federal Constitution. The expression by the Supreme Court is now the prevailing law throughout the land. Whatever one may personally feel about the Opinion of the Supreme Court, its edict is law, and 'as the Constitution of the United States is the supreme law of the land, anything in the Constitution or statutes of the States to the contrary notwithstanding, a statute of 'a State, even when avowedly enacted in the exercise of its police powers, must yield to that law.'

"We deem it necessary to take note, in passing, of your proclamation that 'from time immemorial, it has been assumed that a state has a right to inspect its food supply.' The Supreme Court Opinion in the Dean Milk Company case does not exclude such continued right to inspect. It is true that the alternatives may be burdensome, as the Court points out, but the right, however more onerous it may now be, still remains in the State. As the Court notes in the Dean case, if the regulating community prefers to rely upon its own officials for inspection of distant milk sources, 'such inspection is readily open to it without hardship, for it could charge the actual and reasonable cost of such inspection to the importing producers and processors.' Other alternatives are suggested in the Court's Opinion and we will not take the time or space to mention them for you apparently are acquainted with the Opinion; and the Court further suggests that imagination might provide still further alternatives.

"Since Section 3238 does provide, under certain conditions for the authoriza-

Corp. v. Hirsch, 331 U.S. 752, 67 S.Ct. 1493, 91 L.Ed. 1796 (1947); Allen v. Grand Central Aircraft Co., 347 U.S. 535, 74 S.Ct. 745, 98 L.Ed. 933 (1954). This leads us to consider the applicability of the doctrine of abstention.

## Abstention

The doctrine of abstention is a self-imposed limitation upon the jurisdiction of the federal courts "whereby the federal courts, 'exercising a wise discretion', restrain their authority because of 'scrupulous regard for the rightful independence of the state government' and for the smooth working of the federal judiciary. * * * " Railroad Comm. of Texas v. Pullman Co., 312 U.S. 496, 501, 61 S.Ct. 643, 645, 85 L.Ed. 971 (1941); Spector Motor Service v. McLaughlin, 323 U.S. 101, 65 S.Ct. 152, 89 L.Ed. 101 (1944); Stefanelli v. Minard, 342 U.S. 117, 72 S.Ct. 118, 96 L.Ed. 138 (1951). A thorough discussion of the reasons underlying the doctrine may be found in the opinion of Circuit Judge Cameron in Empire Pictures Distributing Co. v. City of Fort Worth (5 Cir. 1960), 273 F.2d 529, 531–540. The doctrine is particularly appropriate where, as in this case, the more delicate constitutional questions of the limits of state power to require fitting standards of sanitation to protect the health of its citizens by policing and inspecting the production and processing of milk before it can be sold in its market, without trespassing upon rights guaranteed by the commerce and due process clauses are raised. Railroad Comm. of Texas v. Pullman Co. (supra); City of Chicago v. Fieldcrest Dairies (supra); Cf. Dean Milk Co. v. City of Madison, 340 U.S. 349, 353–354, 71 S.Ct. 295, 95 L.Ed. 329 (1950). It should be applied when there is a likelihood that the state courts will be able to dispose of the case by construing § 22–196 to avoid constitutional doubts. See Alabama State Federation of Labor, etc. v. McAdory, 325 U.S. 450, 471, 472, 65 S.Ct. 1384, 89 L.Ed. 1725 (1945); Spector Motor Service v. McLaughlin (supra). The extent to which the doctrine of abstention has been exercised is illustrated by the history of the case of Government & Civic Employees Organizing Comm. v. Windsor, 353 U.S. 364, 77 S.Ct. 838, 839, 1 L.Ed.2d 894 (1957).[9] Although we do not find it

---

tion for the importation of pasteurized milk into the State, with the approval of the Milk Regulation Board, and you indicate that you have actually issued permits for such importations in the past, it is quite possible for you to continue with the operation of Section 3238, modified to the extent indicated by the United States Supreme Court.

"Very truly yours,
George C. Conway,
Attorney General
BY: Jack Rubin,
Assistant Attorney General"

[Reports of the Attorney General of the State of Connecticut, 1951]

Also, § 22–196 might be read as requiring no more than to impose the burden upon an out-of-state applicant to prove affirmatively at its own expense that it is in compliance with Connecticut requirements. No matter how acute the problem of getting inspection at the source of supply in the dairy industry may be, it is obvious that many practical considerations are likely to arise if the state insists on furnishing its own inspection at the plain-

tiff's plant, but see State of Minnesota v. Barber, 136 U.S. 313, 322, 10 S.Ct. 862, 34 L.Ed. 455; Reid v. State of Colorado, 187 U.S. 137, 23 S.Ct. 92, 47 L.Ed. 108, or adopts properly safeguarded conformity standards under the regulations of another state. This is obviously an area in which the specialized knowledge and competence of the board should be brought to bear before any determination of the unconstitutionality of § 22–196 should be considered by this court. See United States v. Western Pacific R. Co., 352 U.S. 59, 64, 65, 77 S.Ct. 161, 1 L.Ed. 2d 126.

9. A three-judge district court withheld the exercise of jurisdiction to enjoin a state statute on the grounds of unconstitutionality of a state statute "to permit the exhaustion of such state administrative and judicial remedies as may be available." Thereafter denial by the lower court in Alabama of an injunction seeking to enforce the statute was affirmed by the Supreme Court of Alabama. Dismissal of the case thereafter by the three-judge court was reversed because the Alabama

736

necessary to decide the question whether abstention forbids the exercise of jurisdiction here following Burford v. Sun Oil Co., 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943) because the controversy involves the application of state law and policy to a complicated situation or whether discretion requires the alternative disposition of retaining jurisdiction as in City of Chicago v. Fieldcrest Dairies (supra); Leiter Minerals Inc. v. United States (supra); Railroad Comm. of Texas v. Pullman Co. (supra), there is no doubt that an "appropriate adjudication" must be had in the state courts before this court will decide the question posed by the plaintiff here. The plaintiff's assertion that it has already exhausted state court remedies because it has been thwarted by procedural niceties is adequately refuted in Spector Motor Service, Inc. v. Walsh, 135 Conn. 37, 42, footnote 1, 61 A.2d 89 (1943).

There are strong reasons to believe that the Connecticut courts would construe § 22–196 so as to avoid any constitutional doubts. In construing state statutes they apply the rule that the legislature intended to enact a constitutional statute. Cedar Island Improvement Ass'n v. Clinton Electric Light & Power Co., 142 Conn. 359, 372, 114 A.2d 535 (1955); State v. Muolo, 119 Conn. 323, 330, 176 A. 401 (1935); See State ex rel. Rourke v. Barbieri, 139 Conn. 203, 209, 91 A.2d 773 (1952). If there is any reasonable ground on which a statute can be sustained, the Connecticut courts will presume that to have been intended by the legislature. State ex rel. Higgins v. Civil Service Comm., 139 Conn. 102, 90 A.2d 862 (1952). The two possible interpretations to avoid unconstitutionality indicated in footnote 8 are simply illustrations and are not meant as suggestions to the state courts; for if they should apply the same principles of statutory construction here to achieve a substitution of the disjunctive "or" for the conjunctive "and" as

they have done in Bania v. Town of New Hartford, 138 Conn. 172, 176, 83 A.2d 165 (1951); and in Bordonaro v. Senk, 109 Conn. 428, 430, 147 A. 136 (1929) no fragment of constitutional doubt might remain. A similar result could be reached by declaring that portion of the statute which might be tainted with unconstitutionality to be invalid as in State v. Sul, 146 Conn. 78, 89, 147 A.2d 686 (1958).

The only relief demanded is a judicial declaration that a portion of § 22–196, Conn.Gen.Stat.Rev. of 1958 is unconstitutional as applied to the plaintiff's plant in Cranston, Rhode Island. When an action for a declaratory judgment under 28 U.S.C. § 2201 was used to launch this novel method of collateral attack upon state administrative proceedings at the district court level in Public Service Comm. v. Wycoff, the Supreme Court in granting certiorari (343 U.S. 975, 72 S.Ct. 1074, 96 L.Ed. 1368,) requested counsel to discuss whether a single judge had jurisdiction to hear and determine the case in view of 28 U.S.C. § 2281. The respondent contended in Wycoff that "a three judge court was not required because the suit does not question the constitutionality of any Utah Statute nor the validity of any order of the State Commissioner," and that it had offered no proof of threatened or pending action by the Commissioner and that no injunction was urged. After noting that the trial court did make a general finding that no interference had been made or threatened, the opinion states, p. 241, 73 S.Ct. p. 239:

"The respondent appears to have abandoned the suit as one for injunction but seeks to support it as one for declaratory judgment, hoping thereby to avoid both the three-judge court requirement and the necessity for proof of threatened injury. Whether declaratory relief is appropriate under the circumstances of this case apparently was not consid-

court had not passed upon the constitutional questions. The Supreme Court remanded "with direction to retain juris-

diction until efforts to obtain *appropriate adjudication* in the state courts have been exhausted." (Emphasis provided.)

737

ered by either of the courts below. But that inquiry is one which every grant of this remedy must survive." (Public Serv. Comm. v. Wycoff Co., 344 U.S. 237, 73 S.Ct. 236, 97 L.Ed. 291 (1952).

There is no evasion here. This suit seeks nothing other than a declaration of the unconstitutionality of a specific Connecticut statute. That the relief sought does not bring this case unmistakably within the statutory requirement for a three-judge court only because an injunction is not prayed for now [10] does not deter me from holding that where a judicial declaration is sought that a state statute is unconstitutional such relief is beyond the permissible limits of the judicial discretion which a district court is required to heed in actions brought under the federal Declaratory Judgment Act. During argument before the court, plaintiff's counsel suggested that a judgment of this court would probably have the same effect upon Connecticut state officials as an injunction. Since there is some indication of this, I conclude that there is not only the power but the duty to decline jurisdiction which is given. In cases which do not attempt to reach so far as to have a federal court declare a state statute unconstitutional, "A declaratory judgment, like other forms of equitable relief, should be granted only as a matter of judicial discretion, exercised in the public interest. * * * Especially where governmental action is involved, courts should not intervene unless the need for equitable relief is clear, not remote or speculative." Mr. Justice Frankfurter in Eccles v. Peoples Bank, 333 U.S. 426, 68 S.Ct. 641, 644, 92 L.Ed. 784 (1947). If the court were to "declare" the state statute unconstitutional, could the plaintiff then obtain an injunction under 28 U.S.C. § 2202 which provides, "Further necessary or proper relief based on a declaratory judgment or

decree may be granted, after reasonable notice and hearing" without the requirement of a three-judge court? Would the three-judge court relitigate the question of constitutionality of the state statute?

With more reasons for doing so in this case than existed before the Supreme Court in Public Service Comm. v. Wycoff (supra), p. 249, 73 S.Ct. p. 243, I, in like manner, "conclude that this suit cannot be entertained as one for injunction and should not be continued as one for a declaratory judgment."

The motion to dismiss is granted and it is so ordered.

10. Florida Lime & Avocado Growers, Inc. v. Jacobsen, 362 U.S. 73, expressly held at p. 85, 80 S.Ct. 568, p. 575, 4 L.Ed.2d 568, "Where a complaint seeks to enjoin a state statute on substantial grounds of federal unconstitutionality, then even

though nonconstitutional grounds of attack are also alleged, we think the case is one that is '*required* by * * * Act of Congress to be heard and determined by a district court of *three* judges.' 28 U.S.C. § 1253." (Emphasis provided.)