**UNITED STATES ex rel. Thomas JOHNSON, Petitioner,**

v.

**CHAIRMAN, NEW YORK STATE BOARD OF PAROLE, et al., Respondents.**

**No. 73 C 934.**

United States District Court, E. D. New York.

Sept. 13, 1973.

Thomas Johnson, pro se.

Burton Herman, New York City (Louis J. Lefkowitz, Atty. Gen. of N. Y., of counsel), for the Board of Parole.

## MEMORANDUM AND ORDER

DOOLING, District Judge.

On June 6, 1966, Petitioner was sentenced in Kings County Supreme Court to a term of fifteen to sixteen years as a second* felony offender. In March 1973 the Petitioner appeared before the Board of Parole, and, without disclosing the basis of its action, the Board denied parole on March 13, 1973, and continued defendant's imprisonment for another year. Petitioner applied to the Cayuga County Supreme Court for an order directing the Board to inform Petitioner of the reasons for the denial of parole, and, upon its failure to state reasons for the denial, to direct Petitioner's release on Parole. On May 4, 1973, the Petition was denied on the ground that Petitioner had not shown that the Board's proceedings were not according to law, and, therefore, under Correction Law, McKinney's Consol.Laws, c. 43, § 212, the Parole Board action constituted a judicial function and was not reviewable. The Attorney General points out that Petitioner did not appeal that determination, and argues that denial of parole necessarily reflects a negative finding on the statutory issue (Correction Law § 213): is there "reasonable probability that, if such prisoner is released, he will live and remain at liberty without violating the law, and that his release is not incompatible with the welfare of society." Compare 18 U.S.C. § 4203(a).

Venue might have been but has not been objected to in this case, and it has not been suggested that the Chairman of the Parole Board and the respondent Commissioner are not personally suable. *Cf.* Palermo v. Rockefeller, S.D.N.Y. 1971, 323 F.Supp. 478, 484–485. Note Sobel v. Reed, S.D.N.Y.1971, 327 F. Supp. 1294. While reconsideration of Preiser v. Rodriguez, 1973, 411 U.S. 475, 93 S.Ct. 1827, 36 L.Ed.2d 439, is persuasive that the present application might possibly be treated as a *habeas corpus*

application, since it is ultimately related to, even if it does not directly "challenge" the "fact or duration of . . . physical confinement", the critical relief sought is, nevertheless, disclosure of the grounds on which parole has been denied. Required disclosure of the grounds of denial cannot of itself effect a release; it can, at best, give Petitioner a basis for reviewing the denial under N.Y.C.P.L.R. Article 78 for illegality or abuse of discretion, or, more probably and more usefully, it can furnish Petitioner with some guidance for his own rehabilitative effort.

 The question directly presented, then, is whether due process requires that the Board of Parole disclose to a prisoner the ground on which parole has been denied, whether, that is, a procedure that appears to be well settled and to have been adopted as a policy is supportable against a claim that it fails to accord prisoners the process due to the nature of their interest in earning release on parole. To make such a claim in this Court Petitioner need not first exhaust his state remedies. He has, in his contention, already been subjected to the deprivation complained of, and that the State might afford him a remedy in its courts is beside the point. *Cf.* Houghton v. Scranton, 1968, 392 U.S. 639, 88 S.Ct. 2119, 20 L.Ed.2d 1319; Smartt v. Avery, 6th Cir. 1967, 370 F.2d 788.

 A prisoner, of course, has no accrued "right" to parole. But the parole statute provides for release in circumstances that are defined, although hedged with a requirement that the Board be of the "opinion" that the "probability" that the prisoner is ready for parole exists. Under such a statute the prisoner has the right to equal treatment with all other prisoners, and has an earned "right" to parole if the Board is in fact of the opinion that there is a reasonable probability that, if released,

---

\* Petitioner has been granted a belated right to appeal the underlying felony conviction of 1960 (see E.D.N.Y. 71 C 1125), but that appeal is pending undetermined in the Appellate Division, Second Department; the appeal was taken in August, 1972.

the prisoner will live and remain at liberty without violating the law, and that his release is not incompatible with the welfare of society, and provided that the Board is satisfied that he will be employed in self-sustaining work (Correction Law §§ 213, 214). Parole is not a gift, but it is a conditional entitlement. It must, in reason, become a legally cognizable "right" when there is a manifest correspondence between the prisoner's situation and the terms of the parole statute. Whether or not the Board of Parole must be allowed a wide range of judgment, and must be empowered to make determinations that respond individually to the immense variety and complexity of the human situations that the Board is required to consider and to shape, the Board remains a body of public officers charged with a specific statutory responsibility toward prisoners. The prisoners' parole interests imply procedural rights that are real, and at minimum entitle the prisoner to relief against demonstrable discrimination, or abuses of discretion, or the introduction into parole decision-making of illicit considerations. *Cf.* Smartt v. Avery, 6th Cir. 1967, 370 F.2d 789. Effective judicial review to assure that the prisoner is not denied his conditional "rights" without due process, however, requires a statement of the ground of any decision denying parole, for only in that way can the reviewing court determine whether or not the decision is without foundation in fact, or is discriminatory, or is infected by reference to factors that may not properly be considered. See Smartt v. Avery, *supra; cf.* Paszel v. Laird, 2d Cir. 1970, 426 F.2d 1169, 1175; United States v. Lenhard, 2d Cir. 1970, 437 F. 2d 936. And only if a statement of reasons is given can the denial of parole serve its legitimate function, to direct the prisoner toward effective rehabilitative effort, and avoid becoming meaningless and unenlightening castigation. So much would seem to follow from United States ex rel. Bey v. Connecticut Board of Parole, 2d Cir. 1971, 443 F.2d 1079, 1085–1086 despite the earlier decision in Menechino v. Oswald, 2d Cir. 1970, 430 F.2d 403, which dealt with parole release rather than parole revocation (as in the *Bey* case), and which assumed that Escoe v. Zerbst, 1935, 295 U.S. 490, 55 S.Ct. 818, 79 L.Ed. 1566, and its "act of grace" analysis enjoyed continuing validity; *Bey* considered the "act of grace" language of Escoe v. Zerbst no longer tenable when offered to counter claims of due process. See Morrissey v. Brewer, 1972, 408 U.S. 471, 482, 92 S.Ct. 2593, 33 L.Ed.2d 484. Lewis v. Rockefeller, 2d Cir. 1970, 431 F.2d 368, otherwise nearly directly in point, deferred to *Menechino*, but it reflects the explicit reluctance with which the majority of the Court rejected the prisoner's due process claim as insubstantial. And in this Court Judge Judd, while denying relief in a parallel case, observed that, while the recent cases had not overruled Briguglio v. Board of Parole, 1969, 24 N.Y.2d 21, 298 N.Y.S.2d 704, 246 N.E.2d 512 (United States ex rel. Woods v. Regan, 72 C 1307, March 23, 1973),

> ". . . they destroy any basis for relying on Escoe v. Zerbst . . . which the New York Court of Appeals cited in the *Briguglio* case. In fact Judge Kaufman [now Chief Judge Kaufman] said in . . . *Bey* . . . that the Escoe distinction between matters of right and matters of grace had been destroyed by the Supreme Court's holding in Goldberg v. Kelly, 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 . . . (1970)."

And Morrissey v. Brewer, *supra,* refused to apply the invalid "right" against "privilege" analysis in defining due process in parole revocation matters. The standard of analysis used was determination first of the extent to which the individual involved will be condemned to suffer grievous loss, then to determine whether the individual's threatened interest is within the "liberty or property" language of the Fourteenth Amendment, and, if so, to determine what "process" is "due" in light of the demands of the

particular situation, including, of course, the natures of the governmental function and of the individual interest involved. In parole release cases the most basic of human liberties is involved, the interest in freedom from imprisonment, and the governmental function, determination of parole eligibility, is one of the highest importance, for it is directly related to the safety of people in their persons and property, and of the greatest difficulty, for it requires predictive evaluation of human conduct in one of the most complex of human situations, and in circumstances in which erroneous decision is inevitably destructive either of individual or of public interests of manifest importance. But the difficulty of decision and the patent risks involved in giving expression to the ground of a decision denying parole—inviting deceptive enactment of an unreal "rehabilitation" charade—cannot justify mute denials that create a risk of anomie and deny guidance.

In spite of the recent *en banc* decision in Scarpa v. United States Board of Parole, 5th Cir. 1973, 477 F.2d 278, 282, it is not possible to continue in the confidence that *Menechino* earlier warranted that the Court of Appeals in this Circuit will hold that prisoners are not entitled to the minimum of due process that would be accorded them by requiring the Board of Parole to disclose the ground of its denial of parole. That does not mean that the Board must make findings of fact, and must comment on every item in the prisoner's file and relate it to the standards of the statute governing parole. It does mean that the Board must, however briefly, state the ultimate ground of its decision denying parole with sufficient particularity to enable the prisoner to understand how he is expected to regulate his conduct and to enable a reviewing court to determine whether inadmissible factors have influenced the decision, and to determine whether discretion has been abused.

It is, accordingly,

Ordered that the Board of Parole furnish to the Petitioner a statement of the ground of its decision of March 13, 1973, denying the Petitioner release from imprisonment on parole.