James David FREEMAN, Jr., Plaintiff,

v.

Kenneth F. SCHOEN, Individually and as Commissioner, Minnesota Department of Corrections, et al., Defendants.

No. 4–74–Civ. 37.

United States District Court,
D. Minnesota,
Fourth Division.

Jan. 30, 1974.

Melvin B. Goldberg, Legal Assistance to Minnesota Prisoners, Minneapolis, Minn., for plaintiff.

Warren R. Spannaus, Atty. Gen., by James N. Bradford and Gilbert S. Buffington, Asst. Attys. Gen., St. Paul, Minn., for defendants.

## MEMORANDUM

LARSON, District Judge.

James David Freeman, Jr., an inmate at the Minnesota State Prison at Stillwater, brings this action for injunctive relief, seeking to have his name submitted to the Minnesota Corrections Authority for consideration for parole release to the Minnesota Restitution Center.

The Restitution Center is a live-in, community-based residential program conducted at the Minneapolis YMCA. Certain randomly selected prisoners who have committed nonviolent crimes live there while working to compensate their victims. The Center, part of the Department of Corrections, is partially funded by Federal monies furnished to the Minnesota Department of Corrections pursuant to authority granted by Title 1, Section 304, Omnibus Crime Control and Safe Streets Act of 1968, Public Laws 90–351 and 91–644 and Ex. Order No. 3, May 27, 1971, State of Minnesota.

Admission to the program, which began in August, 1972, has been based on a process of random selection of Stillwater inmates in their fourth months at that institution. About half of those inmates who meet five objective criteria, usually about three to five prisoners per month, are randomly chosen for recommendation to the Corrections Authority.

Those criteria are that the prisoner be an adult offender committed to the Minnesota State Prison; that he be committed from the seven-county metropolitan Twin Cities area; that no Federal detainers be filed against him; that all of his present offenses be property offenses; and that he has lived in the community for five years prior to the commission of his present offense, during which time he did not use a knife or gun in the commission of a criminal offense.

Given a willingness to participate on the part of the prisoner, a contract is made between him, the staff of the Restitution Center, and, where feasible, the victim(s). This contract is then submitted to the Corrections Authority, which determines whether parole should be granted and, if so, the length of time of the parole and whether it should be granted to the Restitution Center. New applicants may be considered for admission to the Center only at their first appearance before the Corrections Authority.

The plaintiff pleaded guilty in Hennepin County District Court in Minneapolis in July 1973 to receiving and concealing stolen property. He was fined $10,000 and placed on probation. In September 1973 he was sent to Stillwater for up to five years for violating the terms of his parole.

Plaintiff's troubles with the law were highly publicized by the local news media. It was alleged that he and his father were at the core of a large interstate fencing ring disposing of stolen property, much of it taken from retail clothing stores in the Twin Cities. His father was convicted last September and is currently serving a ten year sentence in Stillwater.

In November 1973 it was determined that the plaintiff met the objective criteria for eligibility to Restitution Center. His name also was randomly selected for presentation to the Corrections Authority at its parole release hearings scheduled at Stillwater for late January 1974. Whether or not recommended for Restitution Center, his first parole hearing would be at that time.

Earlier this month, Thomas Lawson, project coordinator of the Department of Corrections and one of the defendants herein, sent a letter to the then director of Restitution Center informing him that the plaintiff was an inappropriate candidate for placement there and that his name would not be submitted to the Corrections Authority for this program. Lawson based this decision on the "high visibility nature of the criminal activi-

ties" engaged in by the plaintiff and his father, the attendant adverse community sentiment that might be generated by plaintiff's inclusion in the program, and that the program was not intended to encompass persons with his background and character. "In the final analysis," he wrote, "the factors of political sensitivity, adverse community sentiment and the nature of criminal activity are the controlling factors in my decision."

Refusing to abide by this decision, the Center's director then was fired. Lawson subsequently reaffirmed his position of not submitting plaintiff's name as a candidate for Restitution Center to the Corrections Authority. A compensation contract has been worked out by the plaintiff, the Center's staff, and two of his principal victims.

Because the plaintiff's upcoming first parole release hearing will be his only opportunity to secure admission to the Center, plaintiff contends that failure to submit his name to that body will cause irreparable injury to him. Consequently, he brings this action for declaratory and injunctive relief against Lawson; Kenneth F. Schoen, Commissioner of the Department of Corrections; Ronald Johnson, Program Supervisor for Restitution Center; and their agents and employees.

Plaintiff's appearance before the Corrections Authority originally was scheduled for January 24. Upon defendants' agreement to postpone his appearance until January 29 or 30, the Court deferred ruling on plaintiff's motion for a temporary restraining order. The Court now has determined that such relief is proper and, accordingly, has ordered defendants to refrain from not submitting the Restitution Center's presentation of plaintiff's name to the Corrections Authority.

The Court has jurisdiction of this action under 28 U.S.C. § 1343(3) and (4), relating to causes of action arising under the Civil Rights Act, 42 U.S.C. § 1983, and 28 U.S.C. §§ 2201, 2202, relating to declaratory judgments.

Plaintiff contends, *inter alia*, that defendants have violated the Due Process and Equal Protection clauses of the Fourteenth Amendment by treating him differently, in an arbitrary and a capricious manner, than other prisoners with regard to eligibility for the Restitution Center.

Defendants argue that the program is an experimental, elastic one, and that they may utilize flexibility in determining which prisoners should be eligible for the Center. They point to a number of portions of the application for the Federal grant, virtually identical to the newly submitted re-funding proposal, that purportedly set forth the overall goals and kinds of persons to be included within the program. Plaintiff, they say, does not come within the ambit of those descriptions.

Not having had the opportunity, due to the exigencies of time, to take testimony on the matter, the Court must necessarily base its decision on the documentation before it. Scrutiny of the initial funding proposal dispels defendants' argument.

In the portion labelled "POPULATION," the aforementioned five objective criteria are set forth. The proposal goes on to clearly indicate that any person who satisfies these objective standards—as the plaintiff here did—and whose name is randomly selected—as was plaintiff's—will necessarily be included in the program, provided he is willing to participate.

"Given that an offender meets all of these [five objective] criteria and is randomly selected, he is offered an opportunity to take part in the program. Given a willingness to do so, a contract is worked out between the offender and his victims and brought to the [Corrections Authority] at the four-month [sic] following admission to the Prison. The [Corrections Authority] then makes the decision as to whether the offender will be released on parole status to the Restitution Center."

This language leaves no room for the contention that the list of objective criteria, and random selection of persons who satisfy it, was not considered to be exhaustive of the requirements for participation in the program.

Moreover, the information before the Court indicates that, up to now, that is precisely the way the program has operated in fact. The plaintiff apparently is the first and thus far only prisoner to have met the criteria, been randomly selected, expressed his willingness to participate, had a contract worked out for compensating his victims, and yet faces the prospect of not having the Center submit his name to the Corrections Authority.

This is confirmed by defendants' answer, Par. 6, which in effect admits that the five objective criteria exhaust the requirements for eligibility for the program in the first instance.

Under the Civil Rights Act, 42 U.S.C. § 1983, the issue is whether defendants' conduct deprives the plaintiff of any "rights, privileges, or immunities secured by the Constitution . . . ."

██ The mere fact of criminal conviction and incarceration does not deprive one of all of his rights. It is now widely recognized that the rudiments of Due Process must be applied in disciplinary proceedings brought against prisoners. *See, e. g.,* United States ex rel. Miller v. Twomey, 479 F.2d 701 (7th Cir. 1973); Sostre v. McGinnis, 442 F. 2d 178 (2d Cir. 1971) (en banc), cert. denied sub nom. Sostre v. Oswald, 404 U.S. 1049, 92 S.Ct. 719, 30 L.Ed.2d 740 and 405 U.S. 978, 92 S.Ct. 1190, 31 L. Ed.2d 254 (1972); Pearson v. Townsend, 362 F.Supp. 207 (D.S.C.1973); Landman v. Royster, 333 F.Supp. 621 (E.D.Va.1971); Clutchette v. Procunier, 328 F.Supp. 767 (N.D.Cal.1971); Bundy v. Cannon, 328 F.Supp. 165 (D.Md. 1971).

In Morrissey v. Brewer, 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972), the Supreme Court held that certain basic Due Process rights must be adhered to in the parole revocation process. *Morrissey* dealt only with the question of parole revocation. But it has been viewed as mandating "that due process precede any substantial deprivation of the liberty of persons in custody." Miller v. Twomey, *supra,* 479 F.2d 713.

Although recognizing the differences between parole revocation and parole granting, a number of courts have applied the basic rule of *Morrissey* to parole release hearings. They have required that practices and procedures comport with certain fundamental elements of Due Process. Childs v. United States Board of Parole, 14 Crim.L.Rep. 2135 (D.D.C. Oct. 15, 1973); United States ex rel. Johnson v. Chairman, New York State Board of Parole, 363 F.Supp. 416 (E.D.N.Y.1973); Johnson v. Heggie, 362 F.Supp. 851 (D.Colo.1973); United States ex rel. Harrison v. Pace, 357 F.Supp. 354 (E.D.Pa.1973). *But see* Mosley v. Ashby, 459 F.2d 477 (3rd Cir. 1972); Menechino v. Oswald, 430 F.2d 403 (2d Cir. 1970), cert. denied, 400 U.S. 1023, 91 S.Ct. 588, 27 L.Ed.2d 635 (1971); Barradale v. United States Board of Paroles & Pardons, 362 F. Supp. 338 (M.D.Pa.1973).

██ The instant case involves neither discipline nor parole revocation. Nor does it directly deal with parole release, which is a determination here that ultimately must be made by the Corrections Authority. But just as parole is "an integral part of the penological system," Morrissey v. Brewer, *supra,* 408 U.S. 477, 92 S.Ct. 2598, the submission by the Restitution Center of plaintiff's name to the Corrections Authority for inclusion in its program is a significant part of the parole system in Minnesota.

It is now or never for the plaintiff. Under current procedures, if his name is not presented for eligibility at the upcoming hearing he will never again have such an opportunity. Moreover, it appears that presentation of his name for inclusion in the program will significantly augment his chances for being paroled. Accordingly, failure to submit his

name will constitute a "grievous loss" for him that is subject to scrutiny under the Due Process clause. Morrissey v. Brewer, *supra,* 408 U.S. 482, 92 S.Ct. 2593. *See also* Sostre v. McGinnis, *supra,* 442 F.2d 198; United States ex rel. Johnson v. Chairman, New York State Board of Parole, *supra,* 363 F.Supp. 419.

In *Childs,* the Court held that the process for the granting of parole need not carry all of the same procedural protections as required by *Morrissey* for revocation of parole. But certain conditions were mandated by the Court in order to reduce "arbitrary and capricious" conduct by the authorities.

In the instant case the plaintiff has been, or will be, subjected to precisely such action by the defendants. They have prescribed and followed certain rules for determination of eligibility for Restitution Center; they now seek to modify those practices in a retroactive fashion that singles out the plaintiff so as to preclude his participation in the program. The defendants appear to be acting in violation of the unqualified, written rules that have been applied to all other inmates, except the plaintiff. See Pearson v. Townsend, *supra,* 362 F. Supp. 225.

Plaintiff does not have a "right" to parole. United States ex rel. Johnson v. Chairman, New York State Board of Parole, *supra,* 363 F.Supp. 417. But he does have a right under the Due Process clause "to relief against demonstrable discrimination, or abuses of discretion" in determinations regarding eligibility for the Restitution Center, a part of the parole release process. *Ibid.,* 418. Since the pertinent regulations and practices here establish certain unconditional qualifications for eligibility, plaintiff has a "right to equal treatment with all other prisoners." *Ibid.,* 417.

■ The conduct of defendants in refusing to allow submission of his name for purposes of participation in the Center's program transgresses these rights. The subjective considerations put forth in the refusal to present his name to the Corrections Authority have the effect of treating him differently than other inmates in an arbitrary, ex post facto manner.

Once the presentation is made to the Corrections Authority, that body need not grant parole. In fact, it can take into account some of the same considerations put forth in defendant Lawson's letter and other subjective factors in passing upon parole for the plaintiff. *See generally,* Lewis, Due Process in Parole-Release Decision, 60 Cal.L.Rev. 1518 (1972).

■ But defendants are obligated under the Due Process clause at least to accord the plaintiff the same treatment as other inmates with regard to eligibility for the program. If they wish to change the regulations and practices concerning selection of candidates for Restitution Center, they may do so in the future. But they may not arbitrarily do this retroactively so that only the plaintiff is precluded from possible participation.

For these reasons the motion to grant the temporary restraining order under Rule 65(b) of the Federal Rules of Civil Procedure must be granted. A hearing on plaintiff's motion for a preliminary injunction also has been set for February 6, 1974. Depending upon the outcome of plaintiff's hearing before the Corrections Authority, that hearing may become moot.

It is ordered That Kenneth F. Schoen, Commissioner, Minnesota Department of Corrections, and Thomas Lawson, Project Coordinator, Minnesota Department of Corrections, and Ronald Johnson, Program Supervisor of Restitution Center, their agents and employees, and all persons acting in concert with them, be, and they hereby are, restrained from failing to submit the Minnesota Restitution Center's presentation of plaintiff's name to the Corrections Authority.

It is further ordered That this Order expire within ten days after entry un-

less within such time the Order for Good Cause Shown is extended or unless the defendants consent that it may be extended for a longer period.