In the Matter of DANIEL HAMM, Respondent, v. PAUL J. REGAN et al., Constituting the Board of Parole of the State of New York, Appellants.

Third Department, January 31, 1974.

*Louis J. Lefkowitz, Attorney-General (Frederick R. Walsh, Jean M. Coon and Ruth Kessler Toch of counsel), for appellants.*

*Gene Ann Condon for respondent.*

*Legal Aid Society (William E. Hellerstein, Joel Berger, Warren H. Richmond and Richard A. Greenberg of counsel), amicus curiae.*

*New York Civil Liberties Union (Eve Cary of counsel), amicus curiae.*

GREENBLOTT, J. This is an appeal from so much of a judgment of the Supreme Court at Special Term, entered August 1, 1973 in Albany County, in a proceeding commenced pursuant to CPLR article 78, which ordered that the Board of Parole of the State of New York "shall make a written decision setting forth its reasons for the revocation of petitioner's

parole and the facts upon which its determination to revoke said parole is based ".

Petitioner, an inmate of the Auburn Correctional Facility, was resentenced on May 11, 1971, for the crimes of manslaughter, first degree (10 to 20 years), attempted murder, first degree (5 to 15 years), these terms to be served consecutively, and attempted robbery, first degree (5 to 15 years), this last sentence to run concurrently with the sentence for attempted murder, first degree. Since petitioner was initially convicted and imprisoned in 1965, he became eligible for parole in late 1972.

On November 7, 1972, petitioner appeared before a three-member panel of the Parole Board, which unanimously agreed to grant petitioner a parole to begin on a release date of December 14, 1972, pending approval of a program which he had set up for his release.

On November 27, 1972, the entire 10-member Board of Parole met and reversed the earlier determination of the three-member panel. Whether this action by the full board was a " reconsideration " of a previous decision or a " revocation " of petitioner's parole is one of the questions raised on this appeal, but, in any event, petitioner was denied parole for at least another 18 months. At a hearing held on January 16, 1973, petitioner was given the following explanation of the board's action: " Hamm, we talked some time ago, since that time the decision which was rendered then and the one subsequent to that was reconsidered by the full board and reversed. The board then directed that you should have an opportunity to reappear and that we at this time communicate to you the reason which was felt controlling by us when we considered your case. One thing that the Statute says to us is we must consider the community into which the guy has been paroled and the prevailing attitude there into which he will go. It was felt by the parole board that it would be a negative community reaction to your release and that was the reason for the change in the decision. It was believed that it would be better for us to come to you and say that to you face to face so you will have an opportunity to respond to and thats what I have done."

On March 14, 1973, petitioner commenced this proceeding to annul the determination of the Board of Parole which denied his parole, to direct petitioner's release on parole, and to direct the board to divulge the reasons for its determination. Special Term granted the request for a statement of reasons, while

denying the petition insofar as it sought to annul the board's determination or secure petitioner's release on parole. It is from this decision that the Board of Parole appeals, arguing that the petitioner is entitled to no further explanation of the reasons for the denial of his parole.

We begin with the proposition that, in rendering an initial decision, the Board of Parole was under no statutory duty to give a prisoner any explanation for its action. Section 213 of the Correction Law provides that discretionary release on parole shall be granted "only if the board of parole is of the opinion that there is reasonable probability that, if such prisoner is released, he will live and remain at liberty without violating the law, and that his release is not incompatible with the welfare of society." Nowhere in section 214 of the Correction Law ("Method of release") is the board required to find facts or state reasons for its conclusions; the board is only required to examine the prisoner, inquire into his background, and then "reach its own conclusions as to the desirability of releasing such prisoner on parole." (Correction Law, § 214, subd. 4.) Once these steps are taken "any action taken by the board pursuant to this article shall be deemed a judicial function and shall not be reviewable if done in accordance with law." (Correction Law, § 212, subd. 10.) Thus, at least as regards an initial decision whether to grant or deny parole, "so long as the Board violates no positive statutory requirement, its discretion is absolute and beyond review in the courts" (*Matter of Hines* v. *State Board of Parole*, 293 N. Y. 254, 257).

We recognize, nevertheless, that "law" goes beyond the procedural steps prescribed in the statutes, and that the standards by which the board considers prisoner eligibility for parole must be subject to some measure of judicial scrutiny.* In *United States ex rel. Johnson* v. *Chairman, New York State Bd. of Parole* (363 F. Supp. 416), the United States District Court felt that this scrutiny could not be operative unless a prisoner was informed of the ultimate reason for a denial of parole, and therefore concluded that a statement of the ground of decision would have to be provided. On the facts of this case, it is not necessary for us to determine whether *Johnson* (*supra*) stands for the proposition that, under New York law and/or the due process clause of the United States Constitution, any

---

* We agree with Special Term that the due process requirements established in *Morrissey* v. *Brewer* (408 U. S. 471) for parole revocations are not applicable where a prisoner has not been released and thus does not face the loss of actual liberty which was so crucial to the *Morrissey* decision.

prisoner who is denied parole is entitled to a statement of reasons therefor. The case before us is more like that which was presented to the Supreme Court of California in *Matter of Prewitt* (8 Cal. 3d 470) where a decision granting parole was rescinded prior to the release date for unstated reasons. Although we are not in full agreement with that court's conclusion that an inmate whose unexecuted release on parole is rescinded is entitled to all the protections of *Morrissey* v. *Brewer* (408 U. S. 471), we do feel there is merit to the observation that the right to achieve liberty after a grant of parole but before release is much closer in nature to the loss of actual liberty after release than is the mere hope that a favorable decision granting release will be made in the first instance (see *Matter of Prewitt, supra,* p. 474).

Here, however, the Board of Parole did state its reason — the negative community reaction which was anticipated. Since respondent has not appealed from so much of the decision at Special Term denying any form of relief other than the right to a statement of reasons, no purpose could be served by determining whether this reason as given was adequate. Therefore, the petition as presently before us is moot and should be dismissed.

The judgment should be reversed, on the law and the facts, and the petition dismissed, without costs.

Cooke, J. (dissenting). I dissent.

Actions of the parole board are subject to some, though limited, measure of judicial scrutiny (Correction Law, § 212, subd. 10), the theory that such actions are completely beyond the ken of judicial review as " acts of grace " from a benign sovereign having been laid to rest (see *Morrissey* v. *Brewer*, 408 U. S. 471, 481–482 [1972]; *People ex rel. Menechino* v. *Warden*, 27 N Y 2d 376, 384). The appellants contend that so long as the board violates no positive statutory requirement, its discretion is absolute and beyond review in the courts (citing *Matter of Hines* v. *State Board of Parole*, 293 N. Y. 254, 257). However, it is clear that compliance with statutory requirements does not end judicial inquiry where a constitutional challenge is advanced (*United States ex rel. Harrison* v. *Pace*, 357 F. Supp. 354, 356 [E. D. Pa., 1973]). The board's action involved herein is reviewable to determine whether it satisfies due process requirements (see *Matter of Cummings* v. *Regan*, 76 Misc 2d 137; *Matter of Cummings* v. *Regan*, 76 Misc 2d 357).

It is now settled law that parole revocation proceedings are subject to due process requirements of the State and Federal

Constitutions (*Morrissey* v. *Brewer, supra*; *People ex rel. Menechino* v. *Warden, supra*); it is also the law in New York that parole release proceedings are not (*Matter of Briguglio* v. *New York State Bd. of Parole,* 24 N Y 2d 21, 26; *Menechino* v. *Oswald,* 430 F. 2d 403 [2d Cir., 1970], cert. den. 400 U. S. 1023). The instant case involves elements of both under its unusual factual pattern. Petitioner appeared before a three-member parole board panel which unanimously decided to grant him parole and set an "open date" of December 14, 1972 for his release. The effect of this action was to grant petitioner his release without further action on the part of the parole board except to approve of his work and living arrangements in society. Before his actual release, the full 10-member board reversed that decision (7 NYCRR 1.8), informing the prisoner that it "was felt by the parole board that it would be a negative community reaction to your release". In response to an ensuing inquiry from petitioner to Commissioner Oswald, Board Chairman Regan informed him, by letter, that the rescission of his parole was based "on new facts of a confidential nature which were uncovered and had to be considered by the Board."

On a similar set of facts, the California Supreme Court in *Matter of Prewitt* (8 Cal. 3d 470) held that the rescission of an unexecuted grant of parole was tantamount to a revocation of parole, requiring all the due process rights mandated by *Morrissey* v. *Brewer* (*supra*). This court need not decide whether all the due process rights enumerated in *Morrissey* apply here; the only issue before us is whether a prisoner in such a situation is entitled to a statement of ultimate reasons for the loss of his limited but valuable right to be free.[1] He is entitled to such a statement,[2] both as a matter of due process of law under the State and Federal Constitutions (see cases cited in n. 2) and because it is essential to the proper exercise of our function of judicial review of parole board actions such as this. Here, "the rudiments of procedural due process are

1. No attempt is made herein to determine whether or not petitioner should be released on parole.

2. Although it is unnecessary to decide and no decision is made herein as to whether a prisoner in a "normal" proceeding is entitled to a similar statement of reasons in the event parole is denied, it is noteworthy that several courts have answered that question in the affirmative (see, e.g., *Matter of Cummings* v. *Regan,* 76 Misc 2d 137; *Matter of Cummings* v. *Regan,* 76 Misc 2d 357; *United States ex rel. Johnson* v. *Chairman, New York State Bd. of Parole,* 363 F. Supp. 416 [E.D.N.Y. 1973]; *United States ex rel. Harrison* v. *Pace,* 357 F. Supp. 354 [E.D. Pa., 1973]; *Childs* v. *United States Board of Parole* [D.D.C., Sept. 30, 1973, BRYANT, J.]; *Monks* v. *New Jersey State Parole Bd.,* 58 N. J 238).

not observed unless the administrative body details the reasons for its findings." (*United States ex rel. Harrison* v. *Pace, supra,* p. 356, citing *Goldberg* v. *Kelly,* 397 U. S. 254 [1970]; *Matter of Gault,* 387 U. S. 1 [1967]; Davis, Administrative Law, § 16.12, p. 585 [1970 Supp.].) Clearly, decisions based on race, religion or sex alone, to cite obvious examples, would not be " done in accordance with law " (Correction Law, § 212, subd. 10; cf. *United States ex rel. Johnson* v. *Chairman, New York State Bd. of Parole,* 363 F. Supp. 416, 417–418). Similarly, other irrelevant and illegal considerations may occasionally and inadvertently enter into board decisions. If secrecy as to ultimate reason is permitted, effective judicial review, which is our duty, would be impossible (*United States ex rel. Johnson* v. *Chairman, New York State Bd. of Parole, supra*; *United States ex rel. Harrison* v. *Pace, supra,* p. 357; *Matter of Cummings* v. *Regan,* 76 Misc 2d 137).

The instant case is an example of how impermissible considerations might possibly enter into parole board deliberations and improperly affect their decisions. By stating its " reason " for rescinding petitioner's parole the board has indicated that the " negative community reaction " was deemed controlling. If such a consideration, in and of itself, can properly enter parole board deliberations, let alone control the exercise of their discretion, few prisoners would ever be paroled as it can reasonably be assumed that communities rarely welcome offenders into their midst. Parole is not to be granted solely on the basis of community approval; rather, the board must consider whether there is a reasonable probability that, if released, the prisoner will live and remain at liberty without violating the law, and that his release is not incompatible with the welfare of society (Correction Law, § 213). A negative community reaction is not synonymous with incompatibility with the welfare of society. Neither is the mere statement of it as a reason for rescission of an unexecuted grant of parole sufficient to meet due process requirements.

In order to comply with the rudimentary requirements of due process, the statement of reasons must recite the ultimate fact which led to rescission of parole " with sufficient particularity to enable the prisoner to understand how he is expected to regulate his conduct and to enable a reviewing court to determine whether inadmissible factors have influenced the decision, and to determine whether discretion has been abused " (*United States ex rel. Johnson* v. *Chairman, New York Bd. of Parole, supra,* p. 419).

Accordingly, the matter should be remitted for further proceedings not inconsistent herewith.

Herlihy, P. J., Kane and Main, JJ., concur with Greenblott, J.; Cooke, J., dissents and votes to remit in an opinion.

Judgment reversed, on the law and the facts, and petition dismissed, without costs.