In the Matter of MICHAEL CUMMINGS et al., on Behalf of Themselves and All Other Persons Similarly Situated, Respondents, v. PAUL J. REGAN, as Chairman of the New York State Board of Parole, et al., Appellants.

Third Department, July 25, 1974.

*Louis J. Lefkowitz, Attorney-General (Frederick R. Walsh, Jean M. Coon* and *Ruth Kessler Toch* of counsel), for appellants.

*William E. Hellerstein (Warren E. Richmond* of counsel), for respondents.

KANE, J. At the time of the commencement of this proceeding, each of the named petitioners was an inmate in the custody of the New York State Department of Correctional Services. It is not disputed that each had appeared before the Board of Parole and been denied parole release without a statement of reasons for such action. Subsequently, each petitioner requested the board to provide him with a statement of reasons for the denial of parole release and none received a response. This article 78 proceeding in the nature of mandamus was then commenced. Special Term ordered that the proceeding be treated

as a class action in favor of all inmates of New York State correctional facilities who have been refused release on parole and adjudged that the Board of Parole provide each member of that class: " with a written statement setting forth the ultimate ground of their decision denying parole with sufficient particularity to enable the prisoner to understand how he is expected to regulate his behavior and to enable a reviewing court to determine whether inadmissible factors have influenced the decision, and to determine whether discretion has been abused ". This appeal ensued.

Two comparatively narrow issues are presented for our review: (1) was this proceeding properly designated a class action, and (2) did Special Term err in compelling appellants to furnish members of such a class with its reasons for denying release on parole?

We have recently considered an aspect of the latter issue in *Matter of Hamm* v. *Regan* (43 A D 2d 344). Although that decision foreshadows the instant case to some degree, it is factually distinguishable in two vital respects. In *Hamm* we were concerned with a situation in which the board had reversed an earlier determination to grant parole to an inmate. In addition, it appeared there that the board did give a reason for its denial of parole, whereas in this case it is conceded that none of the petitioners were so advised after their requests had been made. Nevertheless, *Hamm* does confirm the proposition that the board is under no *statutory* duty to state its reasons when denying parole to an inmate (*supra,* p. 346). In apparent recognition of that principle, petitioners seek to ground their claim for mandamus relief upon the supposed *constitutional* duty of the board to furnish a written statement of reasons when denying parole as a matter of due process.

In reviewing the applicable statutory requirements, it should be noted that release on parole can be granted " only if the board of parole is of the opinion that there is reasonable probability that, if such prisoner is released, he will live and remain at liberty without violating the law, and that his release is not incompatible with the welfare of society." (Correction Law, § 213.) Furthermore, " No prisoner shall be released on parole unless the board is satisfied that he will be suitably employed in self-sustaining employment if so released " (Correction Law, § 214, subd. 4).

As to the constitutional question, we fail to find any support for petitioners' argument prior to 1971. Indeed, as recently as 1969 the Court of Appeals specifically held in *Matter of*

*Briguglio* v. *New York State Bd. of Parole* (24 N Y 2d 21) that a prospective parolee had no constitutional right to be represented by counsel in a release hearing before the Board of Parole. In the course of its opinion, the court unanimously observed that " there is simply no constitutional basis for applying the guarantees of the due process clause to a parole release proceeding " (*supra,* p. 26). In 1970 the United States Court of Appeals for the Second Circuit likewise failed to discover any due process rights attaching to New York's parole release procedure (*Menechino* v. *Oswald,* 430 F. 2d 403; see *Williams* v. *United States,* 327 F. Supp. 986).

However, in 1971 the New Jersey Supreme Court prerogatively required that jurisdiction's parole board to supply inmates denied parole with a statement of reasons therefor (*Monks* v. *New Jersey State Parole Bd.,* 58 N. J. 238). By 1973 several lower Federal and State courts had begun to reach the same result on procedural due process grounds (see, e.g., *United States ex rel. Johnson* v. *Chairman, N. Y. State Bd. of Parole,* 363 F. Supp. 416, affd. 500 F. 2d 925 [June 13, 1974]; *United States ex rel. Harrison* v. *Pace,* 357 F. Supp. 354; *Solari* v. *Vincent,* 77 Misc 2d 54; *Matter of Cummings* v. *Regan,* 76 Misc 2d 137, affd. 45 A D 2d 222). California has followed this trend at the appellate court level (see *Matter of Sturm,* 11 Cal. 3d 258 [April 18, 1974]) and *Johnson* (*supra*) has recently been affirmed (see *United States ex rel. Johnson* v. *Chairman, N. Y. State Bd. of Parole, supra*). Despite these developments, the United States Circuit Court of Appeals for the Fifth Circuit refused to apply due process principles to parole release proceedings so as to require that a statement of reasons for the denial of parole be supplied (*Scarpa* v. *United States Bd. of Parole,* 477 F. 2d 278). While resolution of the instant appeal should be influenced by the foregoing authorities, we must note that, prior to last year, no judicial forum, with the exception of *Monks* (*supra*), ever found it necessary to apply any procedural due process safeguards to parole release proceedings and that those courts which approached the question had uniformly declined to do so.

We believe it probable that the decision of the Supreme Court in *Morrissey* v. *Brewer* (408 U. S. 471 [June 29, 1972]) encouraged further probing into this area of " prisoner rights " litigation. In *Morrissey* the requirements of due process were found to attach to parole *revocation* proceedings, but, even then, it was not found necessary to extend the full panoply of due process rights to such revocations. Petitioners would have us

extend the import of that case so as to hold that due process rights also attach to parole *release* proceedings and then, so. their argument runs, declare that, as a minimum incident of procedural protection, inmates denied such release be afforded a written statement of reasons for such an adverse determination.

We will not do so. *Morrissey* teaches us that, although constitutional rights do not depend upon whether the governmental benefit is characterized as a " right " or a " privilege ", procedural protections should be extended as a matter of constitutional prerequisite according to the extent to which an individual would otherwise be condemned to suffer grievous loss within the contemplation of " liberty or property " (*supra,* p. 481). It should not be overlooked that inmates eligible for parole consideration have, by definition, already been deprived of their liberty by due process of law. Their status is markedly different from those who have regained " conditional " liberty by way of parole. Even inmates subject to internal prison discipline possess a greater claim for due process protection because they at least can argue that jail officials are about to further restrict their limited " freedom " within the prison walls (see *Wilkinson* v. *Skinner,* 34 N Y 2d 53). On the other hand, those in the position of these petitioners have, at best, only an expectation or hope that they might not be required to serve the maximum term of their lawful sentences less time for good behaviour. Accordingly, they possess no presently existing interest in liberty or property threatened by further governmental deprivation which could justifiably support a claim for due process protection.

We hasten to point out, however, that the foregoing does not mean that parole eligibles are entirely bereft of legal protection by virtue of their status. Such individuals certainly have an interest in being treated in the same fashion as other similarly situated inmates and obviously possess a concern that the Board of Parole consider the merits of their case in accord with its statutory mandate. Indeed, while subdivision 10 of section 212 of the Correction Law providing that " any action taken by the board * * * shall be deemed a judicial function and shall not be reviewable *if done in accordance with law* " (emphasis added) severely curtails any interference with board determinations, it gives implicit statutory recognition to the inmate's legitimate interest that those determinations be made only within the proper boundaries of the duties and responsibilities enjoined upon the board by law.

Assuming, *arguendo*, that procedural due process does apply to these petitioners, further inquiry remains concerning what process is due. In this *Morrissey* tells us that the procedural protections required are flexible and should be fashioned after an examination is made of the precise nature of the governmental function involved and the private interest to be affected by the proposed governmental action (408 U. S. 471, 481, *supra*). Understandably, inmates have a universal desire to spend as little time in penal confinement as humanly possible. It is not difficult to understand how frustrated they must feel, and how acute their desire becomes, if an adverse determination is believed not to have been founded on a legitimate basis. Yet, in the face of this concern, the parole authorities can effect the conditional release of such individuals only upon an affirmative evaluation, albeit a subjective one, that the prisoner will be able to remain at liberty without again running afoul of society's standards defining criminal responsibility. Thus, a primary function of the Board of Parole is to insure, insofar as reasonably practicable, that none are released from prison unless and until it is satisfied there is a " reasonable probability " that those released will pose no further menace to society.

Petitioners argue that a statement of reasons for an adverse decision is necessary as a minimum protection for the inmate's interest for only then, so they say, can a prisoner refused parole glean knowledge of how to modulate his future conduct so as to rehabilitate himself to a posture more favorable for future consideration and to insure that some illegal, arbitrary or otherwise unlawful consideration did not influence the Board of Parole to reach an improper result. They strongly urge that furnishing such a statement would not lead to judicial interference with the merits of the board's decision; it would merely expose for proper judicial review any potentially improper factor considered by the board which, absent such a statement, might otherwise escape the inmate's attention and fall beyond judicial scrutiny. Petitioners have also expressed the opinion, shared by some of the foregoing authorities, that such a statement of reasons is needed by the judiciary for it to properly perform this review. Only by so doing is it thought that such clearly impermissible factors such as age, sex or race alone could be filtered from the decision making process to insure that the determination was made in accordance with law. Thus, according to their rationale, the duty of the courts to review could only be accomplished by first imposing a duty on the board to disclose why it reached the challenged result.

We do not deem it necessary or appropriate for us to impose such a duty upon the Board of Parole. It must be mentioned that the instant petitioners have not alleged that the board entertained any arbitrary or impermissible matters in reaching the conclusion that they not be released on parole, nor do they even claim that their respective determinations were faulted by capricious reasoning or improper influences.

Enunciation of a rule requiring disclosure would not prompt the board to baldly state an obviously illegal reason. If such impermissible reasons entered into a particular decision (and we do not hesitate to express our doubt that they presently do), the board would hardly be likely to announce them as the basis for its action. At most, a statement of reason would only generate specious litigation and wasted legal effort on the part of some inmates in a fruitless attempt to pick apart the adverse reasons which were enumerated. We are careful to emphasize that this does not mean that we decline to favor adoption of such a requirement simply because it might lead to expanded litigation of doubtful success. Rather, we are simply recognizing the potentially adverse practical effects such a ruling might have in relation to the claim that it would assist the future conduct and prospects of such individuals. No matter how appealingly the argument may be phrased, the presumed beneficial impact of such a statement does not mean that there should be a duty to supply it.

Such a statement is unnecessary for another reason. Judicial review in such cases is severely limited in scope (see Correction Law, § 212, subd. 10; *Matter of Hines* v. *State Bd. of Parole,* 293 N. Y. 254; *Matter of Hamm* v. *Regan,* 43 A D 2d 344, 346, *supra*). Even in a case which found such a statement constitutionally necessary, it was noted that the " Required disclosure of the grounds of denial cannot of itself effect a release; it can, at best, give Petitioner a basis for reviewing the denial under N. Y. C. P. L. R. Article 78 for illegality or abuse of discretion." (*United States ex rel. Johnson* v. *Chairman, N. Y. State Bd. of Parole,* 363 F. Supp. 416, 417, affd. 500 F. 2d 925 [June 13, 1974], *supra.*) In an appropriate article 78 proceeding the statutory scheme is such that " no judicial review of the *merits* in any case is possible " (*Matter of Hines* v. *State Bd. of Parole,* 293 N. Y. 254, 257, *supra*; emphasis supplied). Consequently, if it is assumed that the proposed statement of reasons illuminated some unlawful board activity, it could only serve as a predicate for further board action and would not necessarily lead to the release of the inmate so affected. In such circum-

stances we fail to see how this limited function of judicial review could be further enhanced by a statement of reasons, particularly when the " unlawful " consideration hypothecated could be alleged by the inmate in his petition for article 78 review. It is no answer to say that the prisoner may lack knowledge of such matters that might become constitutionally germane only if a *pattern* of illegality could be demonstrated. In our view, the article 78 machinery now available adequately provides the process due inmates in the position of these petitioners.

Finally, the contention that supplying the information would not adversely affect operations of the board and might conceivably assist inmates, even if accepted, can hardly be allowed to attain the importance of a constitutional duty to do so reachable by mandamus. We much prefer the possible approaches discussed in *Farries* v. *United States Bd. of Parole* (484 F. 2d 948, 949, 950) as alternatives to judicially mandating that a statement of reasons be supplied in each and every case of parole refusal. If such a policy is ever adopted, and we are advised that many jurisdictions have done so, it should be accomplished by board regulation or appropriate legislation.

In view of our foregoing conclusions, it is unnecessary for us to determine whether the instant proceeding was properly treated as a class action. *Moore* v. *Metropolitan Life Ins. Co.* (33 N Y 2d 304) recites the prior restrictive interpretations placed upon what is now CPLR 1005 and expresses the preference, shared by this court, that prospective legislation, as opposed to judicial development, be allowed to more clearly define the limits of class actions. We note only that there may well be reasons for not providing certain groups of inmates with a statement of reasons for parole refusal sufficient to have induced the trial court to have denied class action status to the instant petition.

The judgment should be reversed, on the law, and petition dismissed, without costs.

SWEENEY, J. (dissenting). Distilled to bare essentials, the majority seems to be saying that an inmate has no right to liberty, but only a hope. In arriving at this anachronistic result the majority acknowledges recent court decisions, including *Morrissey* (408 U. S. 471), *Wilkinson* (34 N Y 2d 53), *Matter of Sturm* (11 Cal. 3d 258) and *Johnson* (363 F. Supp. 416, affd. 500 F. 2d 925) which clearly demonstrate a contrary result.

The real issue, in our view, is whether petitioners were denied any element of fundamental fairness. We believe they were.

Concededly, parole release is discretionary with the Board of Parole and there is no statutory requirement to give a reason for the board's action. These established principles, however, do not foreclose a review of the standards used by the board in examining the petitioner's eligibility for parole. The board has a duty to protect the public in not allowing an individual to be released who is not ready to rejoin society. It has a corresponding duty which is equally compelling to see that no prisoner is unjustly deprived of his liberty. Unless these dual responsibilities are equally administered, the efficacy of the parole system is frustrated. It is a fact that the average inmate has a better than 50% chance of being granted parole before his maximum sentence expires. For him the board's determination is one of the most critical decisions which can affect his life and liberty. (*United States ex rel. Johnson* v. *Chairman, N. Y. State Bd. of Parole*, 363 F. Supp. 416, affd. 500 F. 2d 925 [June 13, 1974].) In our opinion, moreover, each inmate has a legal right, and not merely an interest, as stated by the majority, to be treated the same as every other inmate similarly situated. If a prisoner meets the statutory requirements for release, and the board agrees, he has earned the right to release. That such a prisoner will suffer " grievous loss " if his parole release is arbitrarily denied cannot be doubted. In our view, he is no less entitled to due process rights than any other person. The extent to which he must be afforded due process depends on whether his interest in avoiding that loss outweighs the Board of Parole's interest in not disclosing the reason for denying such release. (*Goldberg* v. *Kelly*, 397 U.S. 254.) To deny parole to a prisoner without stating the reason therefor, in effect, deprives him of a meaningful appeal, for, in most cases, he will be unable to establish what is required, i.e., that the board disregarded the prescribed statutory standards in arriving at its determination. (*Wolff* v. *McDonnell*, 418 U. S. 539, 563; *Matter of Guardian Life Ins. Co.* v. *Bohlinger*, 308 N. Y. 174, 183.) There can be no effective review of the denial of parole by this court unless the ground for such decision is disclosed. (*United States ex rel. Johnson* v. *Chairman, N. Y. State Bd. of Parole, supra.*) Furthermore, such a statement would be of incalculable assistance to an inmate in pursuit of his over-all goal of rehabilitation. Ordinary fairness demands that he know the reason why his parole release has been denied. To require such a statement would

not prove onerous, nor would it violate any principle of confidentiality. On the other hand, we can find no governmental interest or justification in the board's right to deny parole without stating its reason therefor.

The majority expresses what it considers to be practical effects of requiring a statement of reasons for denying parole. That it would generate specious litigation, waste legal effort and, undoubtedly, the inmate would not be released anyway, are, in our opinion, speculative and totally inadequate to sustain the board's interest in not disclosing its reason. The majority reveals no valid governmental interest in not requiring the board to disclose the reason for its action. The Court of Appeals has recently held in *Wilkinson* v. *Skinner* (34 N Y 2d 53) that the assertion of a right of prison officials to mete out discipline or withhold privileges without having to give a reason therefor is untenable. In the majority opinion, Judge WACHTLER states (p. 57): "If detention officials did not have to give reasons for their actions in punishing or withholding privileges from an inmate, they could in effect, act in an unconstitutional manner safely screened from court or administrative review [citing cases]." (See, also, *Wolff* v. *McDonnell,* 418 U. S. 539, 563, *supra.*)

We see no difference in the Board of Parole's not having to give a reason for denying an inmate's release on parole. Indeed, in *Newkirk* v. *Butler* (499 F. 2d 1214, 1216–1217), the Second Circuit Court of Appeals held that a prisoner being transferred from a medium security institution to a maximum security institution had, *inter alia,* a right to a statement of reasons for the transfer. The broad powers vested in the board by statute by use of such sweeping terms as " not incompatible with the welfare of society " mandate that it disclose its reason for denying parole in order that its acts be not " safely screened " from appellate review. (See *United States ex rel. Johnson* v. *Chairman, N. Y. State Bd. of Parole, supra.*) We find no merit in the majority's argument that the inmate in *Wilkinson* (or in *Newkirk*) or one similarly situated, possesses a greater claim for due process protection. In each case we are concerned with liberty withheld, and the difference is only a matter of degree. If an inmate subject to internal prison discipline about to be further restricted in his " limited freedom " within the prison walls has a due process right to know the reason therefor, and if an inmate about to be transferred to another institution has a similar right, so too should the eligible inmate with the hope of greater freedom in being released, know why *parole* was denied. In our opinion,

the minimal due process safeguard to which petitioners are entitled is a brief written statement setting forth the reason why parole release has been denied (see *Cummings* v. *Regan,* 45 A D 2d 222).

As to the other issue, the order, in our opinion, is too broad, indefinite and burdensome for practical implementation and Special Term erred in designating the proceeding as a class action.

For the foregoing reasons, the judgment should be modified so as to deny the application that the proceeding be treated as a class action, and, as so modified, affirmed.

HERLIHY, P. J., and STALEY, JR., J., concur with KANE, J.; COOKE and SWEENEY, JJ., dissent and vote to modify in an opinion by SWEENEY, J.

Judgment reversed, on the law, and petition dismissed, without costs.