**Julia ROSADO, Lydia Hernandez, Majorie Miley, Sophia Abrom, Ruby Gathers, Louise Lowman, Eula Mae King, Cathryn Folk, Annie Lou Phillips, and Majorie Duffy, individually, on behalf of their minor children, and on behalf of all other persons similarly situated, Plaintiffs,**

v.

**George K. WYMAN, individually and in his capacity as Commissioner of Social Services for the State of New York, and the Department of Social Services For the State of New York, Defendants.**

**No. 69 Civ. 355.**

United States District Court
E. D. New York.
April 24, 1969.

See also, D.C., 304 F.Supp. 1354.

## MEMORANDUM AND ORDER

WEINSTEIN, District Judge.

This is a class action to declare invalid section 131–a of the New York Social Services Law, McKinney's Consol.Laws, c. 55, effective July 1st of this year, fixing maximum benefits for certain classes of welfare recipients in the state. Plaintiffs, residents of Nassau County and the City of New York who are presently receiving welfare benefits which will be substantially reduced under the new law, have moved for a temporary restraining order. Defendants have moved for the convening of a three-judge court. For the reasons stated below, both motions are granted.

Plaintiffs allege that the New York statute violates the Equal Protection Clause of the Fourteenth Amendment of the United States Constitution and the Social Security Act of 1935, as amended, and the regulations of the United States Department of Health, Education and Welfare, conditioning receipt of federal aid and its use by the states in their welfare programs. In brief, it is the contention of plaintiffs that federal law requires New York State, if it is to participate in the federal welfare reimbursement program, to take into account increases in the cost of

living in computing new benefit levels; that the new state statute violates federal standards by arbitrarily decreasing the sums permitted to be paid to welfare recipients and by arbitrarily discriminating against Nassau County residents in reducing their payments substantially below those available to New York City residents without any basis in cost-of-living differentials; and that the new state law, if it becomes operative, will cause severe and irreparable harm to plaintiffs and their infant charges.

At this preliminary stage of the litigation it is important to note that plaintiffs are not contending that federal law or regulations require the states to provide any welfare benefits. The power of the legislature to determine how the state's resources should be allocated through the levying of taxes and the appropriations of state monies is not being challenged. Rather, it is plaintiffs' position that when a state chooses to participate in the federal welfare program and receives federal appropriations, it must comply with valid federal conditions.

We first address ourselves to the question of a three-judge court. The way the issues have been framed by the parties, they can be broken down into two questions: first, whether a three-judge court is required to hear plaintiffs' equal protection claim that section 131-a constitutes an invidious discrimination against Nassau County welfare recipients and, second, if a three-judge court would be required, whether it should be convened now or whether a single judge should first decide the statutory cost-of-living claim under the Social Security Act.

■ A three-judge court is necessary to hear plaintiffs' equal protection argument. It is clear that it raises a substantial federal question. The Supreme Court's recent decision in Shapiro v. Thompson, 394 U.S. 618, 89 S.Ct. 1322, 22 L.Ed.2d 600 (1969), establishes that the Equal Protection Clause has wide application in the welfare area and sug-

gests that the purpose of conserving funds may not, in and of itself, support grossly dissimilar treatment between similarly situated individuals.

Plaintiffs allege that the classification of New York City residents separate and apart from non-City residents—particularly those in Nassau County—is not based on need since the cost-of-living for welfare recipients in Nassau County is equal to, or higher than, that in New York City. Under the present law Nassau County is grouped with New York City in determining the schedule of payments. Under the proposed law it is grouped with counties outside the City; as a result, welfare payments will be substantially lower than those for New York City residents. The differences are, it is argued, so far out-of-line with cost-of-living differences between the City and County as to constitute an irrational, invidious and unconstitutional discrimination. We cannot, on the record before us, say that this claim is frivolous.

■ Plaintiffs argue that the convening of a three-judge court on this issue is not required because they are not seeking an injunction and because a statute of statewide operation is not being attacked. Neither of these arguments are persuasive. The fact that they are seeking a declaratory judgment rather than injunctive relief, in the circumstances of this case, is merely a semantical, not a practical, difference. A declaratory judgment would have an effect identical to that of an injunction. In their complaint plaintiffs ask for "such other relief" as is appropriate and the Court will have the power to grant an injunction. That one may be required is suggested by the fact that plaintiffs are now seeking a temporary restraining order.

The contention that, so far as the Nassau County plaintiffs are concerned, a statewide statute is not under attack, is also without merit. Challenged is the state's entire plan for setting levels of welfare payments. Plaintiffs' attack, if fully successful, may have an effect

on welfare recipients in every county in the state.

■ The second question is whether this Court should refrain from convening a three-judge court until it decides the statutory cost-of-living issue. Plaintiffs' argument that this is a separate and independent claim and that the statutory issue should be decided first, in an attempt to avoid reaching the constitutional issue, is normally persuasive. In this case, however, all parties agree that time is of the essence. Were the Court to decide the statutory claim first and decide it against plaintiffs, a three-judge court would then need to be convened. The delay would be costly to all concerned.

■ A three-judge court appears to be the appropriate vehicle for speedily resolving all the issues in this case so that uncertainty may be eliminated as soon as possible. A direct appeal to the Supreme Court would lie from a three-judge determination. That Court can move quite expeditiously in matters of this sort, particularly with regard to a stay. Should it subsequently be determined that a three-judge court was not required, the single judge's decision, as part of that three-judge court, would become the opinion of the Court.

■ We turn now to the question of whether a temporary restraining order should be granted pending the convening of a three-judge court.

Extensive briefing, argument, affidavits of the individual plaintiffs, and experts' testimony in Court requires a finding at this preliminary stage of the litigation that plaintiffs have a substantial probability of establishing the validity of their claims and the right to the remedies they seek, both provisionally and permanently. These findings, it should be emphasized, are not findings on the merits of the action.

Both sides have indicated that prejudice will result should section 131–a be declared invalid after administrative action has been taken which would prevent the state from keeping the present system in effect on July 1st. Plaintiffs' testimony supports a provisional finding that the new statute will cause welfare recipients to lose funds required to keep them at the level of bare subsistence. The state's witness testified that, on the one hand, many recipients will receive higher payments under the new system and, should the state commence payments under section 131–a, the state will not be able to obtain reimbursement if the section is struck down. On the other hand, he stated, it will reimburse those whose payments were illegally reduced.

The sums involved are large. It is estimated that payments under the new system will be approximately $10,000,000. a month less than under the old. And in some cases reductions to welfare recipients run in the order of 20%. Thus, both the state and many welfare recipients may be irreparably harmed if payments made under the new statute are ultimately determined to be illegal.

Witnesses for both sides indicated that it would take between six to eight weeks to change from one system to the other. The state's testimony indicated that it was possible to prepare for the new system under section 131–a while remaining in a position to continue the present system should that be required. This could be done, state experts believe, by preserving the present electronic data processing tapes (or by making a copy of them), while making new tapes in planning for the new system. Since the plaintiffs' witness indicated that the City intends to proceed by modifying the present tapes, it is important that the state take steps for their preservation.

Accordingly, the Court is today signing and filing a temporary restraining order and notifying the Chief Judge of this Circuit that a three-judge court ought to be convened pursuant to section 2284 of title 28 of the United States Code.

So ordered.