**Paula CICERO et al., Plaintiffs,**

v.

**Ennis J. OLGIATI, individually and as Chairman of the New York State Board of Parole, et al., Defendants.**

**No. 75 Civ. 2059.**

United States District Court, S. D. New York.

March 17, 1976.

David Rudenstine, Project on Sentencing and Parole, New York Civil Liberties Union, New York City, for plaintiffs.

Louis J. Lefkowitz, Atty. Gen., New York City, for defendants; Jules E. Orenstein, Mineola, N. Y., of counsel.

LASKER, District Judge.

This suit by prisoners in New York State correctional facilities challenges the standards and methods by which the New York State Board of Parole (Parole Board) grants or denies parole on the ground that they are so arbitrary as to violate the requirements of due process. At issue is the constitutionality of the statute (on its face and as applied) which specifies the basis for parole release, New York Correction Law § 213. Plaintiffs seek a declaratory judgment that § 213 is unconstitutional on its face because it is "incapable of being applied rationally, fairly, consistently and non-arbitrarily," (¶ 31, Amended Complaint) and that the Parole Board in practice "unfairly discriminates among prisoners" (¶ 35) and fails "to make parole release decisions which are rational, fair, consistent and non-arbitrary from case to case." (¶ 34)

The plaintiffs are prisoners who have either been denied parole or who will soon become eligible for parole consideration. Defendants are the Chairman and members of the Parole Board, and the Commissioner of the New York State Department of Correctional Services, under whom the Board serves.

The defendants move to dismiss the amended complaint. Plaintiffs seek a class action determination.

## I.

### The Statutory Provision and the Challenge to Parole in New York

New York Correction Law § 213, which sets forth the grounds for granting parole release, reads:

"§ 213. Reasons for release

Discretionary release on parole shall not be granted merely as a reward for good conduct or efficient performance of duties assigned in prison, but only if the board of parole is of opinion that there is reasonable probability that, if such prisoner is released, he will live and remain at liberty without violating the law, and that his release is not incompatible with the welfare of society. If the board of parole shall so determine, such prisoner shall be allowed to go upon parole outside of prison walls and enclosure upon such terms and conditions as the board shall prescribe and shall remain while thus on parole in the legal custody of the board of parole until the expiration of the maximum term or period of the sentence or return to an institution under the jurisdiction of the commissioner of corrections." [1]

1. Although § 213 is the only statute directly under attack, knowledge of other sections of the Correction Law and Regulations promulgated by the Department of Correctional Services which outline the methods to be employed by the Parole Board in making decisions is helpful to an understanding of the operations of the parole system. They are partially set forth.

"§ 214. Method of release
1. The release of a prisoner on parole shall not be upon the application of the prisoner, but solely upon the initiative of the board of parole.

\* \* \* \* \* \*

3. . . . When considering the release on parole of such prisoner, the board shall have before it a complete report of the physical, mental and psychiatric condition of such prisoner, which report shall have been prepared within two months of the date of such consideration, and shall contain all facts and findings necessary to assist the board in making its determination.

4. In addition and with respect to all prisoners, the board of parole shall have before it a report from the warden of each prison in which such prisoner has been confined as to the prisoner's conduct in prison, with a detailed statement as to all infractions of prison rules and discipline, all punishments meted out to such prisoner and the circumstances connected therewith, as well as a report from each such warden as to the extent to which such prisoner has responded to the efforts made in prison to improve his mental and moral condition, with a statement as to the prisoner's then attitude towards society, towards the judge who sentenced him, towards the district attorney who prosecuted him, towards the policeman who arrested him, and how the prisoner then regards the crime for which he is in prison and his previous criminal career. In addition, the board

Plaintiffs attack the facial validity of § 213 not only on the ground that the language authorizing release on parole— "if the board of parole is of opinion that there is reasonable probability that, if such prisoner is released, he will live and remain at liberty without violating the law, and that his release is not incompatible with the welfare of society"—is so vague as to vest unbridled discretion in the Parole Board, but also because it requires the Board to make predictions regarding an inmate's future conduct upon release that are claimed to lie beyond the grasp of human knowledge and expertise. The amended complaint also alleges that the Parole Board "unreasonably and unfairly discriminates among prisoners . . . because of race, class and ethnic prejudices" (¶ 35) and fails to make decisions "which are rational, fair, consistent and non-arbitrary from case to case." (¶ 34) Plaintiffs assert that those decisions are based on inaccurate and insufficient data and are hastily and carelessly determined.

Defendants move to dismiss the amended complaint on a variety of grounds: That plaintiffs' exclusive remedy is a habeas corpus petition, not a civil rights action; that this court should abstain from exercising jurisdiction to allow state courts to deal with the issues presented; that action by this court would offend principles of comity; that a declaratory judgment would unduly interfere with state proceedings; that plaintiffs' claims should be determined solely on a case by case analysis; that the due process clause is inapplicable to the parole release system; that Correction Law § 213 is not unconstitutionally vague and overbroad; that the allegation that the Parole Board's decisions are arbitrary is fatally deficient because the amended complaint does not allege that the decisions are unsupported by the evidence; and that the allegation of racially discriminatory conduct by the Board is unsupported and conclusory. Prolific as these assertions may be, they fall analytically into two categories: first, that a

shall have before it a report from the superintendent of prison industries giving the prisoner's industrial record while in prison, the average number of hours per day that he has been employed in industry, the nature of his occupations while in prison and a recommendation as to the kind of work he is best fitted to perform and at which he is most likely to succeed when he leaves prison. Such board shall also have before it the report of such physical, mental and psychiatric examinations as have been made of such prisoner which so far as practicable shall have been made within two months of the time of his eligibility for parole. The board of parole, before releasing any prisoner on parole, shall have the prisoner appear before such board and shall personally examine him and check up so far as possible the reports made by prison wardens and others mentioned in this section. Such board shall reach its own conclusions as to the desirability of releasing such prisoner on parole. No prisoner shall be released on parole unless the board is satisfied that he will be suitably employed in self-sustaining employment if so released.

5. Appearance before the board pursuant to subdivision four of this section shall mean a personal interview by at least three members of the board at the institution in which the inmate is confined or at such other place within the state as may be agreed upon between the chairman of the board and the commissioner of correctional services. Release on parole shall be determined by unanimous vote of the board members who personally interviewed the inmate or by the vote of a majority of the entire board of parole pursuant to rules of the board.

6. If, after appearance before the board pursuant to subdivision four of this section, the prisoner is denied release on parole, the board shall inform such prisoner, in writing and within two weeks of such appearance, of the facts and reason or reasons for such denial."

Pursuant to legislative authorization (New York Correction Law §§ 6–a, 6–c and 112), the Department of Corrections has promulgated regulations which detail the criteria regarding parole release at 7 N.Y.C.R.R. §§ 1910.5, 1910.10 and 1910.15. Although these regulations in large part mirror the statutory language of §§ 213 and 214, it is worth note that § 1910.15, before restating the procedures in § 214, provides that those criteria are only "*some* of the factors that will be considered by the board . . ." (emphasis added). Moreover, § 1910.5 reaffirms the fact that:

" . . . The Board exercises its discretion as to when, in the interests of the individual himself and of society it is best to grant release."

federal court does not have jurisdiction of the subject matter, or if it does, should decline to exercise jurisdiction; and second, that the amended complaint fails to state a cognizable constitutional claim.

## II.

*The Applicability of Doctrines Precluding A Federal Court's Consideration of the Merits of a Case*

■ Plaintiffs sue under 42 U.S.C. § 1983 which empowers federal courts to consider alleged violations of constitutional rights by those acting "under color of state law" without requiring a plaintiff first to seek redress in a state forum. *Monroe v. Pape,* 365 U.S. 167, 183, 81 S.Ct. 473, 481–82, 5 L.Ed.2d 492, 502–03 (1961). However, recognition of the potential tension between the powers accorded federal courts under the Civil Rights Act and respect for the ability of state courts to safeguard constitutional guarantees has prompted the Supreme Court in certain circumstances to narrow the scope of federal court action in cases alleging § 1983 claims. The Court has also specified the circumstances in which no jurisdiction exists under § 1983.

A. *Relief Under the Habeas Corpus Statute (28 U.S.C. § 2241ff) As Opposed to 42 U.S.C. § 1983*

■ In *Preiser v. Rodriguez,* 411 U.S. 475, 93 S.Ct. 1827, 36 L.Ed.2d 439 (1973) the Supreme Court held that when a prisoner's challenge goes to

"the very fact or duration of his physical imprisonment, and the relief he seeks is a determination that he is entitled to immediate . . . or a speedier release,"

the sole available remedy is a writ of habeas corpus which requires that a plaintiff first exhaust state remedies under 28 U.S.C. § 2254(b). *Id.* at 500, 93 S.Ct. at 1841–42, 36 L.Ed.2d at 456–57. *Preiser* ruled that where the action is

"close to the core" of habeas corpus, Congress' "specific determination" that habeas petitioners initially exhaust state judicial remedies must be respected despite a plaintiff's choice of jurisdictional base. *Id.* at 489, 490, 93 S.Ct. at 1836–37, 36 L.Ed.2d at 450–51.

■ The State characterizes the complaint here as seeking a "wholesale reform of the New York parole system" and argues that the remedy sought fits the *Preiser* definition of a petition for a writ of habeas corpus. We disagree. Although plaintiffs admittedly seek a close examination of the criteria and methods used in making parole release determinations, they do not claim that they or any members of the class they wish to represent are entitled to immediate release or that they have a right to parole at all. Moreover, they seek neither an earlier nor a speedier hearing at which they will be considered for parole. In short, plaintiffs do not ask for release from state custody, and their claims do not fall under the habeas corpus statute.

Our view is consistent with post-*Preiser* rulings in this and other circuits that attacks by prisoners on the manner of parole decision making as distinct from its outcome are not subject to the exhaustion requirements of 28 U.S.C. § 2254(b). *Haymes v. Regan,* 525 F.2d 540 (2d Cir. 1975); *Leonard v. Mississippi State Probation & Parole Board,* 509 F.2d 820 (5th Cir. 1975); *Bradford v. Weinstein,* 519 F.2d 728 (4th Cir. 1974), *vacated and remanded as moot sub nom., Weinstein v. Bradford,* 423 U.S. 147, 96 S.Ct. 347, 46 L.Ed.2d 350 (1975); *U. S. ex rel. Johnson v. Chairman, New York State Board of Parole,* 500 F.2d 925 (2d Cir. 1974), *vacated and remanded as moot sub. nom., Regan v. Johnson,* 419 U.S. 1015, 95 S.Ct. 488, 42 L.Ed.2d 289 (1974). Accord, *Wolff v. McDonnell,* 418 U.S. 539, 554–55, 94 S.Ct. 2963, 2973–74, 41 L.Ed.2d 935, 949–50 (1974) (due process challenges to prison procedures are properly brought under § 1983).[2]

---

**2.** Although defendants argue that the circuit court decisions in *U. S. ex rel. Johnson v.*

*Chairman* and *Bradford v. Weinstein* are of no precedential value because they were dis-

The authorities cited by the defendants are not to the contrary. None deals with a complaint restricted to a prayer for declaratory judgment that the parole statute and process are unconstitutional. The closest to the mark is *Baskins v. Moore*, 362 F.Supp. 187 (D.S.C.1973) which involved parole release proceedings. While the *Baskins* petitioners did seek a declaration that the procedures by which they were denied parole were unconstitutional, they also sought the relief of new parole hearings. We may agree or disagree with *Baskins* that prayer for such relief constituted a habeas corpus action as defined in *Preiser*, but the plaintiffs in the case at hand do *not* seek a new hearing, and this suit accordingly is not " . . . within the core of habeas corpus in attacking the very duration of their physical confinement itself." *Preiser v. Rodriguez, supra*, 411 U.S. at 487–88, 93 S.Ct. at 1835, 36 L.Ed.2d at 449.

The other cases cited by defendants are equally inapplicable. *Mason v. Askew*, 484 F.2d 642 (5th Cir. 1973) involved a complaint in which the petitioner sought actual release. The inmates in *United States ex rel. Dereczynski v. Longo*, 368 F.Supp. 682 (N.D.Ill.1973) asked not only for an injunction requiring procedural due process in parole revocation procedures, but also for "immediate and more speedy hearings" to determine whether they were entitled to release.

### B. *Abstention*

Defendants argue that the court should invoke the doctrine of abstention because plaintiffs' claims involve a statute uninterpreted by state courts, and adjudication of the merits would "needlessly thrust the federal courts into a particularly sensitive and complex area of state regulation."

 As recently as seven weeks ago, the Court of Appeals for this Circuit reaffirmed the proposition framed by Justice Frankfurter in *Railroad Commission v. Pullman Co.*, 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941) that the doctrine of abstention is a narrow exception to the overriding principle that

> "one having a bona fide claim is normally entitled as a matter of right to have the claim adjudicated by a federal tribune [without] relegating the matter to the state court or . . . requiring the plaintiff to exhaust state remedies." *McRedmond v. Wilson*, 533 F.2d 757, at 760 (2d Cir. 1976).

Accord, *Kusper v. Pontikes*, 414 U.S. 51, 54, 94 S.Ct. 303, 306, 38 L.Ed.2d 260, 264–65 (1973); *Lake Carriers' Association v. MacMullan*, 406 U.S. 498, 509, 92 S.Ct. 1749, 1756, 32 L.Ed.2d 257, 268 (1972). Under the doctrine of abstention, a federal court should defer its own action in favor of state court interpretation of a state statute where

> "resolution of a federal constitutional issue is controlled by the interpretation of an unclear or complex state statute that is susceptible to a construction which would avoid or modify the necessity of a constitutional adjudication." *McRedmond v. Wilson, supra*, 533 F.2d at 760.

As summarized by the *McRedmond* court, abstention is appropriate only if the case presents three particular preconditions:

> "1) the statute must be unclear or the issue of state law uncertain;
>
> 2) the resolution of the federal issue must depend upon the interpretation to be given to the state law; and

---

missed by the Supreme Court as moot (see, e. g., *United States v. Munsingwear*, 340 U.S. 36, 39–40, 71 S.Ct. 104, 95 L.Ed. 36 (1950)) this fact does not alter our determination. In *Haymes v. Regan, supra*, the Court of Appeals for this circuit relied on *Johnson* and approved the use of § 1983 to attack parole release procedures. And whether or not the decision in *Bradford v. Weinstein* formally establishes a

precedent, the reasoning of the case is persuasive and in accord with the rulings of this circuit. Compare *Scarpa v. United States Board of Parole*, 477 F.2d 278 (5th Cir.), *vacated as moot*, 501 F.2d 992 (5 Cir. 1973) and *Ridley v. McCall*, 496 F.2d 213, 214 (5th Cir. 1974) where the Court of Appeals specifically ruled that "Scarpa has no precedential value."

3) the state law must be susceptible to an interpretation that would avoid or modify the federal constitutional issue." *McRedmond v. Wilson, supra,* at 761. (citations omitted)

The combination of these three elements is missing here.

■ Although plaintiffs assert that the parole statute is void for vagueness, the issue of constitutionally impermissible ambiguity in a statute does not by itself necessitate resolution by state courts. *Wisconsin v. Constantineau,* 400 U.S. 433, 439, 91 S.Ct. 507, 511, 27 L.Ed.2d 515, 520 (1971). Defendants have pointed to no provision in New York Correction Law § 213 or its companion statutes and regulations which construction by state courts could narrow in such a way as to modify or obviate the need to address plaintiffs' constitutional claims. Indeed, the constitutionality of the vast discretion *explicitly* accorded the Parole Board in § 213 and 7 N.Y.C.R.R. § 1910.5 is the very issue at stake here.[3] As the Supreme Court stated in *Wisconsin v. Constantineau, supra,* where "the naked question . . . is whether that Act on its face is unconstitutional, . . . abstention should not be ordered merely to await an attempt to vindicate the claim in state court." *Id.* at 439, 91 S.Ct. at 511, 27 L.Ed.2d at 520, citing *Zwickler v. Koota,* 389 U.S. 241, 251, 88 S.Ct. 391, 397, 19 L.Ed.2d 444, 451–52 (1967). See also, *Lake Carriers' Association v. MacMullan, supra,* 406 U.S. at 510, 92 S.Ct. at 1757, 32 L.Ed.2d at 268–69.

In any event, the New York Court of Appeals has ruled on three separate occasions that the Parole Board's "discretion is absolute and beyond review in the courts." *Hines v. State Board of Parole,* 293 N.Y. 254, 257, 56 N.E.2d 572, 573 (1944); see *Matter of Briguglio v. New York State Board of Parole,* 24 N.Y.2d 21, 29, 298 N.Y.S.2d 704, 710, 246 N.E.2d 512 (1969); *People v. Fink,* 29 N.Y.2d 443, 446, 328 N.Y.S.2d 666, 668, 278 N.E.2d 904. Section 212(10) of the New York Correction Law provides that:

"Any action taken by the board pursuant to this article shall be deemed a judicial function and shall not be reviewable if done in accordance with law."

The court in *Hines* construed this statute to mean that judicial review is foreclosed "so long as the Board violates no positive *statutory* requirement," (emphasis added) and has consistently adhered to this position. *Hines v. State Board of Parole, supra; Matter of Briguglio v. N.Y.S. Board of Parole, supra; People v. Fink, supra; accord, People ex rel. Schuster v. Vincent,* 42 A.D.2d 596, 344 N.Y.S.2d 735 (2d Dept. 1973), leave to appeal denied, 33 N.Y.2d 1009, 353 N.Y.S.2d 969, 309 N.E.2d 430 (1974). Literally construed, *Hines* and its progeny seem to eliminate the need even for constitutional observance.

Although some state courts have recently begun to consider whether procedural due process requires that the Parole Board furnish an inmate with a written statement of the reasons for denying him release, at least one judicial department in the state has continued to refuse to look into the Board's decisions or procedures. Compare the decisions of the Second and Fourth Departments which have ruled that the Board must furnish a written statement of reasons for denial of parole (*Matter of Cummings v. Regan,* 45 A.D.2d 222, 357 N.Y.S.2d 260 (4th Dept. 1974); *Matter of Phillips v. N.Y.S. Board of Parole,* 46 A.D.2d 1003, 362 N.Y.S.2d 102 (4th Dept. 1974); *Matter of Fancher v. Regan,* 46 A.D.2d 1009, 361 N.Y.S. 786 (4th Dept.

**3.** It would be equally inappropriate to abstain from considering the constitutionality of § 213 as applied for "[a]pplication [of] key statutory clause[s] do not require intricate or penetrating state interpretation best left to the state." *McRedmond v. Wilson, supra,* at 762. As the

Supreme Court stated in *Allee v. Mendrano,* "We have not hesitated on direct review to strike down applications of constitutional statutes which we have found to be unconstitutionally applied." 416 U.S. 802, 815, 94 S.Ct. 2191, 2200, 40 L.Ed.2d 566, 580 (1974).

1974); *Solari v. Vincent and Regan,* 46 A.D.2d 453, 363 N.Y.S.2d 332 (2d Dept.), *dismissed as moot,* 38 N.Y.2d 835, 382 N.Y.S.2d 48, 345 N.E.2d 591 (1976); *Matter of McMoore v. Regan,* 79 Misc.2d 795, 364 N.Y.S.2d 79 (Sup.Ct. Dutchess County 1974)) with the decisions of the Third Department which have refused to require the Parole Board to release such a statement, (*Matter of Hamm v. Regan,* 43 A.D.2d 344, 351 N.Y.S.2d 742 (3d Dept. 1974); *Matter of Cummings v. Regan,* 45 A.D.2d 415, 358 N.Y.S.2d 556 (3d Dept.), *dismissed as moot,* 36 N.Y.2d 969, 971, 373 N.Y.S.2d 563, 335 N.E.2d 864 (1975)). Moreover, the issue of what procedural protections attach to the parole decision making process is quite distinct from the question of the constitutionality of the standard governing the decision itself. That difference was explicitly recognized in *Solari v. Vincent and Regan, supra,* where, while requiring the Parole Board to furnish a statement of reasons for denying an inmate parole, the court stated that it did not intend by its ruling to interfere in any way with the Board's discretion. *Supra,* 46 A.D.2d at 455, 363 N.Y.S.2d at 335.

Plaintiffs' claims are predicated solely on the rights guaranteed by the due process clause of the Fourteenth Amendment and are not "in any way entangled in a skein of state law that must be untangled before the federal case can proceed." *McNeese v. Board of Education,* 373 U.S. 668, 674, 83 S.Ct. 1433, 1437, 10 L.Ed.2d 622, 626 (1963). This case thus more closely parallels *McRedmond v. Wilson, supra,* in which plaintiffs sought an injunction prohibiting the state from confining certain juveniles in facilities which failed to provide what plaintiffs asserted to be a constitutionally guaranteed "right to treatment," than *Reid v. Board of Education,* 453 F.2d 238 (2d Cir. 1971) where the existence of "separate and distinct" state claims, while requiring the court to abstain, nevertheless permitted plaintiffs to separate and preserve their federal claims for later federal court review. See *England v. Louisiana State Board of Medical Examiners,* 375 U.S. 411, 418, 84 S.Ct. 461, 466, 11 L.Ed.2d 440, 446–47 (1964). Moreover, unlike *Reid,* there are no pending state cases which present the issues raised here. See *McRedmond v. Wilson, supra,* at 763.

### C. Comity

In *Younger v. Harris,* 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971), the Supreme Court held that absent extraordinary circumstances, deference to the federal system of government, particularly respect for the state judiciary's ability to determine federal issues arising before it, bars a federal district court from enjoining a pending state criminal prosecution. 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971). The same principles foreclose a federal court from issuing to a defendant in a state prosecution a declaratory judgment voiding the statute under which he is charged. *Samuels v. Mackell,* 401 U.S. 66, 91 S.Ct. 764, 27 L.Ed.2d 688 (1971).

■ Defendants urge the extension of the *Younger* principles to this case. The Supreme Court last term enlarged the application of *Younger* in a number of decisions. The question is whether the present case falls within *Younger's* recently expanded reach.

In *Hicks v. Miranda,* 422 U.S. 332, 95 S.Ct. 2281, 45 L.Ed.2d 223 (1975) the appellee was not a defendant in state proceedings at the time he filed his federal complaint. However, the Supreme Court recognized that his interests were substantially intertwined with those of other state defendants and that he had been named in an indictment one day after his federal complaint was served. 422 U.S. at 348–49, 95 S.Ct. at 2291–92, 45 L.Ed.2d at 238–39. Under these circumstances, the Court held that:

"where state criminal proceedings are begun against the federal plaintiffs after the federal complaint is filed but before any proceedings of substance on the merits have taken place in the federal court, the principles of *Younger v. Harris* should apply in full force."

*Id.* at 349, 95 S.Ct. at 2284, 45 L.Ed.2d at 230.

The mandate to abstain for reasons of comity has also been extended to pending *civil* proceedings where the state is a party to a pending and uncompleted proceeding which "is both in aid of and closely related to criminal statutes," and "akin to a criminal prosecution." *Huffman v. Pursue,* 420 U.S. 592, 604, 95 S.Ct. 1200, 1208, 43 L.Ed.2d 482, 492 (1975). See also *Schlesinger v. Councilman,* 420 U.S. 738, 95 S.Ct. 1300, 43 L.Ed.2d 591 (1975).

Relying on *Huffman,* the Court of Appeals for this circuit has held that federal courts should abstain from exercising jurisdiction to enjoin disciplinary proceedings against attorneys. *Anonymous v. Association of the Bar of City of New York,* 515 F.2d 427 (2d Cir. 1975); *Anonymous v. Bar Association of Erie County,* 515 F.2d 435 (2d Cir. 1975). Noting that the Supreme Court characterized disbarment proceedings as "quasi-criminal" in nature (*In re Ruffalo,* 390 U.S. 544, 551, 88 S.Ct. 1222, 1226, 20 L.Ed.2d 117, 122–23 (1968)), the court emphasized that the interest of the state court in policing the integrity of its officers is "at least as great" as the interest of the state in *Huffman v. Pursue,* because state courts are the only bodies which "can impose sanctions upon those admitted to practice in its courts." *Anonymous v. Association of the Bar of City of New York, supra,* 515 F.2d at 432. See also *Kugler v. Helfant,* 421 U.S. 117, 126, 95 S.Ct. 1524, 1532, 44 L.Ed.2d 15, 25–26 (1975).

This canvass of recent cases in which the doctrine of abstention for reasons of comity has been forcefully reasserted—especially by the Supreme Court—demonstrates the durability of the principle. However, the facts supporting the cited decisions differ materially from those in the case at hand, and none suggests that the court should abstain here.

The fact that parole is one component of the state's criminal justice system in no way compels the application of *Younger. Younger* and its progeny clus-ter about criminal prosecution—the institution of court proceedings by the state to police conduct proscribed by the legislature, whether such conduct is termed criminal or quasi-criminal. The parole process is not concerned with conduct proscribed by the legislature but rather with, as § 213 provides, whether the prospective parolee if "released . . . will live and remain at liberty without violating the law, and that his release is not incompatible with the welfare of society." Thus, the Parole Board deals with material quite different from the criminal court. One cannot be prosecuted for living in a state which is " . . . incompatible with the welfare of society."

Moreover, *Huffman, Kugler, Hicks* and the *Anonymous* cases involved "ongoing, uncompleted proceedings" (as in *Younger*). No such proceedings are pending with which this case can be deemed to interfere.

Put another way, acting on the case in this court will not prevent a " . . . State's judicial system" from being " . . . fairly accorded the opportunity to resolve federal issues arising in its courts . . .," proscribed by Mr. Justice Rehnquist in *Huffman v. Pursue, supra,* 420 U.S. at 592, 95 S.Ct. at 1211, 43 L.Ed.2d at 495. The New York State Board of Parole is a part of the New York Department of Corrections, an executive agency of the state. Since plaintiffs challenge state administrative procedure only and, as noted, there are no judicial proceedings in existence, federal court action here cannot " . . . be interpreted as reflecting negatively upon the state court's ability to enforce constitutional principles." *Steffel v. Thompson,* 415 U.S. 452, 462, 94 S.Ct. 1209, 1217, 39 L.Ed.2d 505, 516 (1974).

### D. *Considerations of Equity*

Separate from the notions of comity and federalism enunciated in *Younger* is the traditional principle that a plaintiff seeking equitable relief must demonstrate (1) likelihood of substantial and irreparable injury and (2) the inade-

quacy of remedies at law, particularly in the context of the criminal process. *O'Shea v. Littleton,* 414 U.S. 502, 94 S.Ct. 669, 679, 38 L.Ed.2d 674, 687 (1974); *Douglas v. City of Jeannette,* 319 U.S. 157, 63 S.Ct. 877, 87 L.Ed. 1324 (1943); *Fenner v. Boykin,* 271 U.S. 240, 46 S.Ct. 492, 70 L.Ed. 927 (1926). Defendants argue that because plaintiffs' real objective here is an injunction prohibiting the enforcement of § 213, they must meet both tests. However, whether or not defendants' view of plaintiffs' ultimate goal is accurate, the amended complaint as framed seeks only declaratory relief and the Supreme Court has ruled that a plaintiff requesting a declaratory judgment need not establish either irreparable injury or the inadequacy of remedies at law. *Huffman v. Pursue, supra,* 420 U.S. at 602–03, 95 S.Ct. at 1207–08, 43 L.Ed.2d at 491–92; *Steffel v. Thompson, supra.*

The absence of a request for injunctive relief in this case also eliminates concern that a district court order not be a basis for "future intervention" or "anticipatory interference," or result in an "ongoing federal audit of state criminal [or quasi-criminal] proceedings." *O'Shea v. Littleton, supra,* 414 U.S. at 500, 94 S.Ct. at 678, 38 L.Ed.2d at 686; *Rizzo v. Goode,* 423 U.S. 362, 96 S.Ct. 598, 607–10, 46 L.Ed.2d 561, 44 U.S.L.W. 4095, 4100–01 (January 21, 1976); *Wallace v. Kern,* 520 F.2d 400, 406 (2d Cir. 1975).

### E. *The Bar Against Wholesale Relief*

Finally, quite apart from the principles just considered, defendants rely on *Wallace v. Kern,* 499 F.2d 1345 (2d Cir. 1974) to argue that relief from alleged unconstitutional acts in the parole release process should not be made available in wholesale lots but should be determined ad hoc on a case-by-case basis. The reliance on *Wallace* is misplaced. It is true that in *Wallace* the Court of Appeals, in reversing an injunction which sought to remedy excessive pre-trial delay in state courts, observed:

"Relief from unconstitutional delays in criminal trials is not available in wholesale lots. Whether an individual has been denied his right to a speedy trial must be determined ad hoc on a case-by-case basis." 499 F.2d at 1351. However, the holding rested on the fact that in *Barker v. Wingo,* 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972) the Supreme Court had explicitly mandated approaching the issue of the right to a speedy trial on a case-by-case basis. *Id.* at 1349. When courts are faced with prisoners' claims of due process violation, including parole cases, neither the Supreme Court nor the Court of Appeals for this circuit has hesitated to consider the merits of the complaint in terms generally applicable to all persons situated similarly. *Gerstein v. Pugh,* 420 U.S. 103, 95 S.Ct. 854, 43 L.Ed.2d 54 (1975); *Wolff v. McDonnell, supra; Haymes v. Regan, supra; U. S. ex rel. Johnson v. Chairman, N. Y. S. Board of Parole, supra.*

In sum, with the exception of the instances noted above—not applicable here—a federal court not only may, but has the obligation to adjudicate claimed violations of constitutional rights brought pursuant to § 1983, and to do so without requiring plaintiffs initially to exhaust state judicial remedies. *Monroe v. Pape,* 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961). As Justice Rehnquist stated only last year:

"By requiring exhaustion of state . . . remedies for the purposes of applying *Younger,* we in no way undermine *Monroe v. Pape* [which held] that one seeking redress under 42 U.S.C. § 1983 for a deprivation of federal rights need not first initiate state proceedings based on related state causes of action." *Huffman v. Pursue, supra,* 420 U.S. at 610–11, n. 21, 95 S.Ct. at 1211, 43 L.Ed.2d at 495. See *Kugler v. Helfant, supra,* 421 U.S. at 123, 95 S.Ct. at 1530, 44 L.Ed.2d at 27.

To accept defendants' argument that we should refuse to determine the merits of plaintiffs' claims would be to shirk responsibility "to our constitutional heritage, which obligates us to vindicate

federal rights." *McRedmond v. Wilson, supra,* at 759, n. 1.

### III.

*Sufficiency of the Claims for Relief*

A. *Applicability of Due Process Guarantees to the Parole Release Process*

 Defendants argue that the plaintiffs are not entitled to due process because parole release procedures involve neither "life" "property" or "liberty" and consequently are not governed by the guarantees of the Fourteenth Amendment. The argument merits scant discussion in light of the Second Circuit decisions in *United States ex rel. Johnson v. Chairman, N. Y. S. Board of Parole, supra,*[4] and *Haymes v. Regan, supra.* The *Johnson* court reasoned that *Morrissey v. Brewer* (408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972)), which held parole revocation proceedings subject to the constraints of due process, necessarily implied that parole was "to be treated as a 'conditional liberty,' representing an 'interest' entitled to due process protection." *Supra,* 500 F.2d at 928. Judge Mansfield writing for the majority, there held:

"A prisoner's interest in prospective parole, or 'conditional entitlement,' must be treated in like fashion. To hold otherwise would be to create a distinction too-gossamer-thin to stand close analysis." *Id.*

As the Supreme Court stated in *Morrissey v. Brewer*:

"Whether any procedural protections are due depends on the extent to which an individual will be 'condemned to suffer grievous loss.' The question is not merely the 'weight' of the individual's interest, but whether the nature of the interest is one within the contemplation of the 'liberty or property' language of the Fourteenth Amendment." *Supra,* 408 U.S. at 481, 92 S.Ct. at 2600, 33 L.Ed.2d at 494. (citations omitted)

The Supreme Court recognized in *Morrissey* that the condition of a parolee "is very different from that of confinement in a prison":

"The liberty of a parolee enables him to do a wide range of things open to persons who have never been convicted of any crime . . . Subject to the conditions of his parole, he can be gainfully employed and is free to be with family and friends and to form the other enduring attachments of normal life." *Id.*

In light of these facts, the *Morrissey* court held:

" . . . That the liberty of a parolee, although · indeterminate, includes many of the core values of unqualified liberty and its termination inflicts a 'grievous loss' on the parolee and often on others." *Id.* at 482.

The Court of Appeals in *Childs v. United States Board of Parole,* 167 U.S.App.D.C. 268, 511 F.2d 1270 (1974) reasoned that the very features of liberty noted in *Morrissey* placed the procedures by which parole was granted or denied under a standard of due process:

"The Board holds the key to the lock of the prison. It possesses the power to grant or deny conditional liberty . . . If the Board's decision is negative, the prisoner is deprived of conditional liberty. The result of the Board's exercise of its discretion is that an applicant either suffers a 'grievous loss' or gains a conditional liberty." *Id.* at 1278.

 The holdings in *Board of Regents v. Roth,* 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1970) and *Perry v. Sindermann,* 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1970) relied on by defendants, do not detract from the validity of this view. *Roth* and *Perry* both turned primarily on whether a teacher had a "property interest" in continued employment within the meaning of the due process clause. Where "liberty" as

4. See note 2, *supra.*

distinct from "property" interests are at stake, the fact that an individual does not enjoy "a legitimate claim of entitlement" does not preclude the right to due process guarantees. Application of the Fourteenth Amendment no longer hinges on "whether a claim involves a 'right' or a 'privilege'". *Graham v. Richardson,* 403 U.S. 365, 91 S.Ct. 1848, 29 L.Ed.2d 534 (1971); *Morrissey v. Brewer, supra,* 408 U.S. at 481, 92 S.Ct. at 2600, 33 L.Ed.2d at 494. Thus, while defendants are correct that prisoners have no right to parole, but only a right to be considered for release by the Board, the distinction is without constitutional significance. *Bradford v. Weinstein, supra,* 519 F.2d at 732.

Our view and that of the Court of Appeals for this circuit is in accord with rulings in three other circuits. *Childs v. U. S. Board of Parole, supra; Bradford v. Weinstein, supra; United States ex rel. Richerson v. Wolff,* 525 F.2d 797 (7th Cir. 1975); *U. S. ex rel. Harrison v. Pace,* 357 F.Supp. 354 (E.D.Pa.1973). Defendants' contention that the rule in this circuit is contrary to the weight of opinion is plainly inaccurate. Moreover, the cases cited by the State were decided prior to *Morrissey* with the exception of *Scarpa v. United States Board of Parole,* 477 F.2d 278 (5th Cir. 1973) *vacated as moot,* 501 F.2d 5992 and *U. S. Board of Parole v. Merhige,* 487 F.2d 25 (4th Cir. 1973) which relied on *Scarpa.* The continuing validity of *Scarpa* is now doubtful given the Fifth Circuit's decision in *Ridley v. McCall,* 496 F.2d 213, 214 (5th Cir. 1974) in which the court ruled that "Scarpa has no precedential value" and remanded the case to the district court to develop the facts in relation to the "awesome constitutional principles" of due process in parole release proceedings.

B. *Challenge to the Statute as Void for Vagueness*

■ Plaintiffs' major argument is that the statutory language in § 213 is so nebulous that it grants uncontrolled power to the Parole Board and necessarily causes decision making on "an *ad hoc*

and subjective basis, with the attendant dangers of arbitrary and discriminatory application." *Grayned v. City of Rockford,* 408 U.S. 104, 109, 92 S.Ct. 2294, 2299, 33 L.Ed.2d 222, 228 (1972). If this assertion is correct, the statute violates the due process clause. See, e. g., *Papachristou v. City of Jacksonville,* 405 U.S. 156, 162, 92 S.Ct. 839, 843, 31 L.Ed.2d 110, 115–16 (1972); *Coates v. Cincinnati,* 402 U.S. 611, 91 S.Ct. 1686, 29 L.Ed.2d 214 (1971); *Giaccio v. Pennsylvania,* 382 U.S. 399, 86 S.Ct. 518, 15 L.Ed.2d 447 (1966).

Defendants assert that the plaintiffs' challenge to § 213 as unconstitutionally vague must be dismissed for failure to state a claim because a reading of the statute demonstrates that "the key . . . words are not difficult to comprehend." When attempting to frame a statute that must be applied in innumerable and distinct circumstances, defendants argue, the due process clause permits language to be "general enough to take into account a variety of human conduct" (*Colten v. Kentucky,* 407 U.S. 104, 110, 92 S.Ct. 1953, 1957, 32 L.Ed.2d 584, 589–90 (1972)) and passes constitutional muster if generally understandable.

■ It is a basic tenet of due process that a statute set forth a comprehensible, even if imprecise, standard of conduct. Language which is so vague that it provides no standard at all offends the notions of fairness embodied in the due process clause. E.g., *Coates v. Cincinnati, supra,* 402 U.S. at 614, 91 S.Ct. at 1688, 29 L.Ed.2d at 217–18 (1971).

The standard set forth in § 213 is twofold: first, the board must be of the "opinion that there is reasonable probability that, if such prisoner is released, he will live and remain at liberty without violating the law;" second, the board must also determine that an inmate's release "is not incompatible with the welfare of society."

At first blush, the phrases used in the statute, because of their very familiarity, may appear to provide a workable stan-

**1094**

dard. Nevertheless, a more thorough examination reveals that the edges of the concepts are at least blurred.

In particular, four phrases in § 213 are susceptible of distinct, and sometimes inconsistent, interpretations. Release is warranted only when the Board holds an "opinion." Neither the statute nor the regulations implementing the statute explain whether "opinion," as used in § 213, means a belief based on faith, a judgment based on findings of fact, or an educated guess based on experience and intuitive responses. The statute also fails to specify how strongly the Board must hold its opinion.

Again, although the fabled reasonable man may have little difficulty in understanding the general meaning of the phrase "without violating the law," as used in day to day affairs, its use as a statutory standard is not unproblematical. § 213 requires the Board to predict whether a parolee, if released will live "without violating the law." Violations of the law may range from commissions of serious felonies to misdemeanors or even to jay-walking, illegal parking or speeding on a highway. Moreover, one cannot judge from reading the statute whether the phrase also includes disregard of restraints placed on a parolee by the Board or violation of non-criminal statutes, such as breaking a lease or defaulting on a note.

Finally, the phrase "not incompatible with the welfare of society," while composed of non-technical words, is equally amorphous. The statute contains no objective standard as to what constitutes the welfare of society or what conduct is incompatible with that welfare.[5] The breadth of the statute is so great that, as Judge Mansfield has noted, in *U. S.*

*ex rel. Johnson v. Chairman, N. Y. S. Board of Parole,* referring to §§ 213 and 214:

"For example, the Board could conceivably be following such questionable policies as (1) denying parole in cases where prisoners had refused to cooperate with law enforcement authorities by acting as informers, (2) denying parole in so-called 'sensitive' cases where, despite the Board's finding that the prisoner was sufficiently rehabilitated not to present a serious risk to the public, release would stir up unfavorable publicity, (3) denying parole where release would be frowned on by prison authorities because of the prisoner's poor discipline record, see *Report on New York Parole* by Citizens Inquiry on Parole and Criminal Justice, Inc. 97–119; Kastenmeier and Eglit, *Parole Release Decision-Making, supra,* at 517–19; Dressler, *Practice and Theory of Probation and Parole* 111–12 (1959), or (4) denying parole where, because of the type of offense for which he had been committed, the prisoner has not yet served an 'appropriate period' of incarceration that satisfies unarticulated and possibly inconsistent views of Board members regarding community retribution, incapacitation, or general deterrence, despite the prisoner's readiness for the community and lack of need for further institutional control, see *New York State Special Commission on Attica, Official Report* 97 (Bantam Books 1972)." *Supra,* 500 F.2d at 931.

The uncertainty of the meaning of § 213's critical terms as shown by this brief analysis raises questions so serious that attack on the statute cannot be disposed of on the necessarily limited state

**5.** Plaintiffs also argue that the term "reasoned probability" is equally elastic. The Board must hold an opinion that there is a "reasoned probability" that an inmate, if released will be law-abiding and that his release will be compatible with society's welfare. The phrase thus establishes what standard of proof the inmate must meet. Defendants contend that this term means "a fair or moderate likelihood (better than 50/50) chance" (Defendants' Memorandum at p. 66). If that is indeed the proper meaning, the phrase is not nearly as amorphous as plaintiffs contend. However, as discussed above, the term "reasoned probability" is but one of several phrases in § 213 under attack and the possible lack of merit with regard to this phrase does not defeat plaintiffs' claim.

of the record at this preliminary stage of the litigation.

It is true that the plaintiffs attack the statute "on its face," a phrase which taken literally would require resolution of the claim solely by reading the words in the statute. However, analysis of statutory language of the character presented here does not always lend itself to such summary analysis.

The cases describe two classes of statutes in relation to claims of vagueness. The first involves a statute so clearly imprecise on its face that the language cannot be saved by any reasonable construction. For example, as the Supreme Court has observed:

"A direction by a legislature to the police to arrest all 'suspicious' persons would not pass constitutional muster." *Papachristou v. City of Jacksonville, supra,* 405 U.S. at 169, 92 S.Ct. at 847, 31 L.Ed.2d at 119.

Or, again, an immediate determination that a statute violates due process is mandated where it "is completely lacking in . . . any . . . terms susceptible of objective measurement." *Cramp v. Board of Public Instruction,* 368 U.S. 278, 286, 82 S.Ct. 275, 280, 7 L.Ed.2d 285, 291 (1961).

The second class includes those statutes which, without explanation of the possible application of their standards, would fall in the impermissibly vague group. The case at hand falls in the second class. In such instances, the court must "extrapolate [the statute's] allowable meaning" from "the interpretation of the statute given by those charged with enforcing it." *Grayned v. City of Rockford, supra,* 408 U.S. at 110, 92 S.Ct. at 2300, 33 L.Ed.2d at 228. This is particularly true where, as here, state courts have left an open field to the administrators to exercise unfettered discretion in the application of the statute. See *Garner v. Louisiana,* 368 U.S. 157, 174, 82 S.Ct. 248, 257, 7 L.Ed.2d 207, 219–20 (1962) (Frankfurter, J., concur-

ring). On the other hand, as the Supreme Court has stated, "There are areas of human conduct where, by the nature of the problems presented, legislatures simply cannot establish standards with great precision." *Smith v. Goguen,* 415 U.S. 566, 581, 94 S.Ct. 1242, 1251, 39 L.Ed.2d 605, 616 (1974). In such circumstances, a statute may constitutionally delegate greater discretion than might be permissible in other contexts. *Id.* In the case at hand it cannot be determined merely on the pleadings whether the parole release system is such an area. As Justice White has realistically noted in an analogous situation, "[t]he unavoidable inquiry . . . becomes whether . . . the statute, as applied . . . is unconstitutional." *Id.* at 586, 94 S.Ct. at 1253, 39 L.Ed.2d at 619 (concurring opinion)

The Department of Correctional Service's own regulations do not save the day for § 213. A constitutionally infirm statute cannot be salvaged by regulations which narrow it. See *Louisiana v. United States,* 380 U.S. 145, 85 S.Ct. 817, 13 L.Ed.2d 709 (1965); *Giaccio v. Pennsylvania, supra.* In any event, the regulations here basically mirror the decision making procedure set forth in § 214 and, if anything, obscure it by stating that the criteria which the regulation specifies are merely "*some* of the factors which shall be considered by the parole board." See note 1.

The State argues that even if the standards articulated in § 213 are insufficiently precise, the provision of the recently enacted § 214(6)[6] which requires the Board to disclose its grounds for denial of parole saves the statute as a whole. But this does not follow. The defects of a statute which may be unconstitutionally vague cannot be remedied by stating the reasons for actions taken pursuant to the defective law. A person subject to the power of the state is entitled to protections from the improper impact of a vague statute even if the

---

**6.** L.1975, c. 131 § 1, effective sixty days after June 3, 1975.

body administering it gives good reasons for its actions.

 The plaintiffs also claim that § 213 is void because it fails to give adequate notice to plaintiffs of the Parole Board's criteria for release. Defendants argue that due process does not require the disclosure of such criteria, relying on *Haymes v. Regan, supra.* An analysis of the opinion in *Haymes* and the briefs and appendix submitted to the *Haymes* court establishes that the issue raised there is substantively the same as that presented here: whether the due process clause requires the Parole Board to disclose its release criteria. Noting that the New York Correction Law had recently been amended to require the Board to inform each prisoner denied parole of "the facts and reason or reasons for such denial," (Correction Law § 214(6)), the *Haymes* court held:

> "Unless and until the statements of specific facts and reasons for denial of parole actually given pursuant to N. Y. Correction Law § 214 prove inadequate to protect inmates in the parole decision-making process, we will not compel the Board to reveal its release criteria." 525 F.2d at 544.

*Haymes* was decided on October 29, 1975. Nothing has been brought to our attention which suggests that since the date of the *Haymes* decision evidence has accrued which would now permit a reexamination of the subject. Accordingly, *Haymes* temporarily forecloses—at least at this time—plaintiffs' claim.

It is worth note, however, that if plaintiffs prevail on their claim that § 213 is standardless and if the section were redrafted to make the standard for granting or denying of parole more specific, a prisoners' desire to know how parole release decisions are reached may well occur in fact. A more specifically defined—and therefore more comprehensible—standard for decision making would almost certainly give notice to prisoners of the basic factors considered by the Parole Board to be important, and together with § 214, which lists the information which is presented to the Board concerning each application, would, as a practical matter, probably provide the relief which plaintiffs seek.[7]

### C. *Equal Protection Claim*

Plaintiffs allege "[u]pon information and belief, the members of the New York parole board unreasonably and unfairly discriminate among prisoners in the granting and denying of parole because of race, class and ethnic prejudices." (¶ 28, Amended Complaint) The State notes that the allegation is devoid of any supporting facts and argues that such conclusory statements are insufficient to support a claim of racial discrimination.

 Even the liberal pleading provisions of the Federal Rules of Civil Procedure require that a complaint contain " . . . a statement of the claim showing that the pleader is entitled to relief." As the Court of Appeals for this Circuit has recently stated as to Civil Rights actions, "It should not be enough . . . in § 1983 suits . . . to make only general charges with no specifications such as might be sufficient under Rule 8 of the Federal Rules of Civil Procedure." *Martin v. Merola,* 532 F.2d 191, at p. 198 (2d Cir. 1976); *accord, Fine v. City of New York,* 529 F.2d 70, pp. 73–74 (2d Cir. December 31, 1975); *Powell v. Jarvis,* 460 F.2d 551, 553 (2d Cir. 1970).

---

7. Plaintiffs are correct that where vague statutes abut "upon sensitive areas of basic First Amendment freedoms," they impermissibly inhibit the exercise of those rights. *Grayned v. City of Rockford, supra,* 408 U.S. at 109, 92 S.Ct. at 2299, 33 L.Ed.2d at 228. The amended complaint alleges that the Parole Board makes decisions in part on the basis of "the political beliefs and activities of a particular inmate." Defendants make no comment on the adequacy of this allegation. If the Parole Board in fact grants or denies parole on this ground, such action would of course be inconsistent with the rights guaranteed by the First Amendment.

It is true, as the court in *Holmes v. New York City Housing Authority* stated:

"The mere fact that some of the allegations in the complaint are lacking in detail is not a proper ground for dismissal of the action." 398 F.2d 262, 265 (2d Cir. 1968).

However, in the case at hand the plaintiffs have set forth *no* details, and accordingly the amended complaint fails to meet the requirements of *Martin* and the other cases cited. The cause of action (¶¶ 28, 35, Amended Complaint) which relates to racial, ethnic and class discrimination is therefore dismissed unless within thirty days of the filing of this memorandum plaintiffs amend their complaint to specify the basis of their information, and the reasons for their beliefs.

### D. *Remaining Issues*

1) The request for attorneys' fees is dismissed on the authority of *Alyeska Pipeline Co. v. Wilderness Society,* 421 U.S. 240, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975).

2) Defendants contend that if federal jurisdiction exists and is to be maintained, a three-judge court should be convened pursuant to 28 U.S.C. § 2281. Although § 2281 requires action by a three-judge court only where "an interlocutory or permanent injunction restraining the enforcement . . . of any State statute" is requested, defendants note that the original complaint in this case sought injunctive relief and argue that, despite withdrawal of that prayer, the declaratory judgment requested is pragmatically a prelude to injunctive relief. Under these circumstances, defendants argue that a decision on the merits of the amended complaint should be made only by a three-judge court following the decisions in *Arrow Lakes Dairy, Inc. v. Gill,* 200 F.Supp. 729 (D.Conn.1961); *Smith v. Pearson,* 294 F.Supp. 611 (N.D.Miss.1968), and *Rosado v. Wyman,* 304 F.Supp. 1350 (E.D.N.Y. 1969). Defendants' contention is un-

sound. Where plaintiffs request declaratory relief alone, the convening of a three-judge court is improper. *Mitchell v. Donovan,* 398 U.S. 427, 90 S.Ct. 1763, 26 L.Ed.2d 378 (1970); *Kennedy v. Mendoza-Martinez,* 372 U.S. 144, 83 S.Ct. 554, 9 L.Ed.2d 644 (1963). Indeed, in *Steffel v. Thompson,* the Supreme Court has stated that the convening of a three-judge court would be inappropriate where, as here, "petitioner's request for injunctive relief was abandoned . . . and only a request for declaratory relief remained." *Supra,* 415 U.S. at 457 n. 7, 94 S.Ct. at 1215, 39 L.Ed.2d at 513. *Accord, Nieves v. Oswald,* 477 F.2d 1109, 1115 (2d Cir. 1973); *Seergy v. Kings County Republican County Committee,* 459 F.2d 308, 312 (2d Cir. 1972). To the extent that the opinions in *Arrow Lakes Dairy, Inc. v. Gill, supra,* and *Smith v. Pearson, supra,* hold that the abandonment of a request for injunctive relief does not avoid the necessity for a three-judge court, the later ruling in *Steffel* undermines their continuing validity. The ruling in *Rosado v. Wyman, supra,* on which defendants also rely, is distinguishable. Although the *Rosado* complaint on its face sought only a declaratory judgment, plaintiffs in fact requested a temporary restraining order, thus requiring the convening of a three-judge court. No such relief has been sought here.

### IV.

### *Motion for a Determination of a Class*

Plaintiffs move for an order allowing this action to be maintained as a class action pursuant to Rules 23(a) and (b)(2) of the Federal Rules of Civil Procedure on behalf of themselves and "all individuals under the control and jurisdiction of the New York State Department of Correctional Services who have either been denied parole or will soon become eligible for parole." In addition, plaintiffs Leroy Glenn, Joseph Jones, Carl Maxie Robinson, Norman Sterling, Leroy Wins, Mario Ocampo, Frank Generette and John Smith move for certifi-

**1098**

cation of a sub-class consisting of "all black and Spanish-surnamed individuals under the control and jurisdiction of the New York State Department of Correctional Services who have either been denied parole or will soon become eligible for parole consideration."

Rule 23(a) states:

"(a) Prerequisites to a Class Action. One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class."

Defendants argue that plaintiffs do not satisfy the requirements of subdivisions (a)(2), (3) and (4). However, any determination as to whether the standard set forth in Correction Law § 213 is so vague that it impermissibly vests the Parole Board with unfettered discretion necessarily involves common issues of law and fact. ((a)(2) of Rule 23). Moreover, although the Parole Board's decisions in individual cases of course involve facts peculiar to each prisoner, all plaintiffs have a common interest in assuring that the Board's decisions are made in a consistent, fair and rational manner. The fact that the Board grants parole to some inmates and denies it to others is not controlling. The question in all instances is whether the decisions are made on an objective and rational basis. Where, as alleged, all class members suffer in the same way from defendants' practices, common issues predominate and the requirements of Rule 23(a)(2) are met. *Inmates of Attica Correctional Facility v. Rockefeller,* 453 F.2d 12, 24 (2d Cir. 1971); *Cortright v. Resor,* 325 F.Supp. 797, 808 (E.D.N.Y.1971), *rev'd on other grounds,* 447 F.2d 245 (2d Cir. 1971), *cert. denied,* 405 U.S. 965, 92 S.Ct. 1172, 31 L.Ed.2d 240 (1975); *Accord Escalara v. New York City Housing Au-*

*thority,* 425 F.2d 853, 857 (2d Cir. 1970), *cert. denied,* 400 U.S. 853, 91 S.Ct. 54, 27 L.Ed.2d 91 (1970); *Norwalk C. O. R. E. v. Norwalk Redevelopment Agency,* 395 F.2d 920, 937 (2d Cir. 1968); *Perez v. Lavine,* 378 F.Supp. 1390 (S.D.N.Y.1974). This case is therefore unlike the situation in *Dale v. Hahn,* 440 F.2d 633, 640 (2d Cir. 1971), cited by defendants where class relief was denied because plaintiffs experienced different treatment with regard to the specific deprivations of procedural due process alleged in the complaint. (Lack of notice and opportunity for a hearing)

 The named plaintiffs also present claims which are typical of the class they seek to represent ((a)(3) Rule 23). The fact that some members of the class are personally satisfied with Parole Board decisions and may prefer to leave the violation of their rights unremedied is not conclusive as to a determination of typicality under Rule 23. *Norwalk C. O. R. E. v. Norwalk Redevelopment Agency,* 395 F.2d 920, 937 (2d Cir. 1968); 3 B Moore, Federal Practice ¶ 23.06–2. Moreover, defendants' contention that plaintiffs are neither typical nor representative of their class ((a)(4) of Rule 23) because "in a mathematical sense [they] do not realistically represent the segments of the . . . inmate population" misconstrues the purpose behind the requirements of Rule 23(a)(3) and (4). Mere numbers or percentages are not controlling factors in determining the appropriateness of a class, 3B Moore, Federal Practice, ¶ 23.07[4]; the quality of the representation is the significant criterion. *Leisner v. New York Telephone Company,* 358 F.Supp. 359, 372 (S.D.N.Y.1973); C. Wright, Federal Courts § 72 (1970). Defendants offer no reasons other than the one mentioned why the named plaintiffs will not adequately present the claims of the class. Plaintiffs' counsel is experienced in class action suits for prisoners, serious of purpose, adequately financed, and has extensive experience in the field of prisoners' rights in general and parole in particular. Plaintiffs therefore satisfy the

requirements of typicality and fair representation under Rule 23(a)(3) and (4).

Finally, plaintiffs' allegations fit the standard of 23(b)(2), which authorizes a grant of class relief where "the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole." As stated above, the different facts presented in each inmate's parole profile do not compel the conclusion that a challenge to parole standards need be considered solely in the context of a particular inmate's history. Indeed, where the heart of a claim is that a standard cannot and is not being applied consistently and fairly on a case-by-case basis, resolution of the controversy necessarily entails examination of the way in which the standard is generally applied. Moreover, the very nature of the issue raised requires the consistency of treatment of the subject which Rule 23(b)(2) was intended to assure. It would benefit neither the State nor the plaintiffs to be faced with inconsistent opinions on the questions raised by the complaint, as might be the result if class action treatment were denied.[8]

The motion to certify a sub-class is also meritorious. Claims of racial discrimination which some plaintiffs assert on behalf of a group of non-white persons have been recognized as an appropriate basis for establishing a sub-class under Rule 23(b)(2). *Norwalk C. O. R. E. v. Norwalk Redevelopment Agency, supra.*

Accordingly, the motion is granted allowing this action to be maintained as a class and the class is defined as "all individuals under the control and jurisdiction of the New York State Department of Correctional Services who have either been denied parole or will soon become eligible for parole consideration." The sub-class is defined as "all black and Spanish sur-named individuals under the control and jurisdiction of the New York State Department of Correctional Services who have either been denied parole or will soon become eligible for parole consideration."

For the reasons stated above, the motion to dismiss is granted with respect to the claim for attorneys' fees. The claim of racial, class and ethnic discrimination is dismissed unless plaintiffs amend their complaint within thirty days of the filing of this memorandum to set forth facts which support their allegations. The claim that plaintiffs are entitled to disclosure of the Parole Board's release criteria is dismissed. The motion to dismiss is otherwise denied. The motions for declaration of a class and sub-class are granted.

It is so ordered.

---

**8.** It is true that the court in *Galvan v. Levine,* 490 F.2d 1255, 1262 (2d Cir. 1973) approved the denial of class determination where class relief would be "largely a formality" because "the State . . . made it clear that it understands the judgment to bind it with respect to all claimants; indeed even before entry of the judgment, it withdrew the challenged policy even more fully than the court ultimately directed and stated it did not intend to reinstate the policy." However, no such showing has been made here. In any event, considerations of judicial economy justify class treatment here to avoid the likelihood of mootness before a final resolution of the merits. See *Board of School Commissioners of the City of Indianapolis v. Jacobs,* 420 U.S. 128, 95 S.Ct. 848, 43 L.Ed.2d 74 (1975); *Bradford v. Weinstein, supra,* (dismissed as moot); *U. S. ex rel. Johnson v. Chairman, New York State Board of Parole, supra,* (dismissed as moot). It would be a waste of judicial resources and litigants' expenses to pursue significant constitutional issues if their ultimate resolution might be aborted solely by a change in status of the named plaintiffs.